**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:      Justices:
Marilyn Kelly      Michael F. Cavanagh
                   Elizabeth A. Weaver
                   Maura D. Corrigan
                   Robert P. Young, Jr.
                   Stephen J. Markman
                   Diane M. Hathaway

FILED MAY 11, 2010

TIMOTHY PIERRON,

      Plaintiff-Appellant,

v

No. 138824

KELLY PIERRON,

      Defendant-Appellee.

BEFORE THE ENTIRE BENCH

PER CURIAM.

At issue here is whether a proposed change of school to one that is 60 miles from the child's present school would modify the established custodial environment of that child and whether, absent a change in the established custodial environment, the trial court must, when considering an important decision affecting the welfare of the child, analyze each of the 'best-interest' factors articulated in MCL 722.23, even if a factor is not relevant to the immediate issue before the court. Under the facts of this case, we answer each of these questions in the negative and therefore affirm.

Plaintiff-father and defendant-mother have two children from their marriage. The divorce judgment entered in 2000 granted the parties joint legal custody and established the children's primary residence with defendant. Both parties and their children lived in

Grosse Pointe Woods until 2007, when defendant relocated to Howell, which is approximately 60 miles away. When defendant tried to enroll the children in Howell public schools, plaintiff objected. At the conclusion of a six-day evidentiary hearing, the trial court ruled that the established custodial environment was with both parents and that defendant's proposed change of schools would modify the children's established custodial environment because plaintiff's parenting time would be adversely affected by the 60-mile distance between the proposed schools and plaintiff's home. Additionally, the trial court held that defendant had not satisfied her burden of proof under the 'clear and convincing evidence' standard to show that the change was in the best interests of the children. The Court of Appeals vacated the trial court's order, holding that the trial court erred by concluding that the established custodial environment would be modified. *Pierron v Pierron*, 282 Mich App 222, 250-251; 765 NW2d 345 (2009). Moreover, the Court remanded the case for the trial court to reevaluate the change-of-school issue and determine whether defendant had demonstrated by a 'preponderance of the evidence' that the change was in the children's best interests. *Id*. at 264.

Under the Child Custody Act, MCL 722.21 *et seq.*, "all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28. Under this standard, a reviewing court should not substitute its judgment on questions of fact unless the factual determination "'clearly preponderate[s] in the opposite direction.'" *Fletcher v Fletcher*, 447 Mich 871,

2

879; 526 NW2d 899 (1994), quoting *Murchie v Std Oil Co*, 355 Mich 550, 558; 94 NW2d 799 (1959).

The Child Custody Act "applies to all circuit court child custody disputes and actions, whether original or incidental to other actions." MCL 722.26(1). The act provides that when parents share joint legal custody-- as the parties do here-- "the parents shall share decision-making authority as to the important decisions affecting the welfare of the child." MCL 722.26a(7)(b). However, when the parents cannot agree on an important decision, such as a change of the child's school, the court is responsible for resolving the issue in the best interests of the child. *Lombardo v Lombardo*, 202 Mich App 151, 159; 507 NW2d 788 (1993); see also MCL 722.25(1).[1] When resolving important decisions that affect the welfare of the child, the court must first consider whether the proposed change would modify the established custodial environment. The established custodial environment is the environment in which "over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c). While an important decision affecting the welfare of the child may well require adjustments in the parenting time schedules, this does not necessarily mean that the established custodial environment will have been modified. *Brown v Loveman*, 260 Mich App 576, 595-596; 680 NW2d

---

[1] MCL 722.25(1) provides, "If a child custody dispute is between the parents, . . . the best interests of the child control."

3

432 (2004).[2] If the required parenting time adjustments will not change whom the child naturally looks to for guidance, discipline, the necessities of life, and parental comfort, then the established custodial environment will not have changed. See *id*. The court may not "'change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child.'" *Id*. at 585, quoting MCL 722.27(1)(c).

Here, the trial court found that the proposed change of schools would modify the established custodial environment because the 60-mile distance between the proposed schools and plaintiff's home "would . . . impinge on the father's ability to provide educational guidance, discipline, and the necessities of life." The Court of Appeals, however, concluded that the trial court's ruling that the proposed change of schools would alter the established custodial environment was against the great weight of the evidence because the distance of the new schools from plaintiff's home would only require relatively minor adjustments to plaintiff's parenting time. We agree with the Court of Appeals.

---

[2]*Brown* involved a change in residence of more than 100 miles, and a custodial environment in which "each parent had fifty percent parenting time." *Brown*, 260 Mich App at 595-596. The dissent asserts that *Brown* stands for "the proposition that if a proposed move would relegate an 'equally active' parent to the more circumscribed role of 'weekend' parent, the parenting time modification would amount to a change in the established custodial environment." Whatever the merits of that proposition, there is no evidence in the instant case that the allocation of parenting time between plaintiff and defendant was "nearly equal."

4

Although the testimony here established that plaintiff is conscientiously involved with his children's education, there is no reason to believe from either the testimony or the trial court's findings of fact that the change of schools will significantly modify the established custodial environment the children share with plaintiff. A review of the record indicates that the children visit plaintiff's home approximately three weekends out of every four, from Saturday afternoon until Sunday evening. Before the instant action was filed with the trial court, the children did not visit overnight on weeknights during the school year.[3] The record also indicates that plaintiff occasionally picks the children up from tutoring and takes them out to dinner during the week. And, one week out of every seven, plaintiff takes the children out to lunch.

Given this record, plaintiff's weekend parenting time will be unaffected. With regard to weekdays, plaintiff is involved with the children during the daytime for only one week out of every seven because this is all that his work schedule allows. Although

[3] After the instant action was filed, the trial court entered an order regarding school district and parenting time, which required the children to attend Grosse Pointe schools. There is some testimony indicating that the children occasionally stayed overnight with plaintiff on some school nights after this order was entered, but *only* presumably to reduce the amount of time that the children spent traveling between Howell and Grosse Pointe Woods. The dissent observes that the trial court found that "overnight visits on weeknights and first option parenting time for plaintiff would no longer be practical" if the children were enrolled in Howell schools. In context, the trial court was clearly referring to the parenting time provision in the judgment of divorce as part of its analysis of whether the established custodial environment would be modified. However, plaintiff, in fact, had not been engaged in weeknight, overnight parenting time. The parenting time provision, by itself, does not establish the actual custodial environment, *Baker v Baker*, 411 Mich 567, 579-580; 309 NW2d 532 (1981), and it was error for the trial court to consider the provision allowing weeknight, overnight visits without also considering that these visits were not occurring.

5

the 60-mile distance is acknowledgedly more inconvenient for plaintiff, it is not so far that plaintiff cannot continue his occasional midweek activities with his children and his involvement in their education.[4] Moreover, the record reflects that the children spend the vast majority of their time in the established custodial environment of their mother, the defendant. In fact, plaintiff's own testimony acknowledged that the children "spend most of their time" with "their mother." From the children's perspective, the changes in the

---

[4] The dissent seems to rely largely on the 60-mile distance itself, rather than on the actual impact that this distance has on the established custodial environment. For instance, the dissent provides several examples of how plaintiff's midweek involvement with his children, much of which pertains to one-time events, may be hindered. However, even with respect to these events, plaintiff was able to attend his son's graduation ceremony that was scheduled during plaintiff's regular workday because the school was near plaintiff's office; when Andrew truanted from school, both plaintiff and defendant dealt with the issue immediately; and when defendant attempted to register the children in the Howell schools, she listed plaintiff as the fourth person to contact in case of emergency, after herself, her sister, who lives closer, and another individual. There is nothing in the record to indicate that plaintiff will be unable to attend graduation ceremonies or other significant events, or to respond to discipline issues or emergencies, if the children attend Howell schools. More pertinently, however, none of these events alters to whom the children naturally look for "guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c). The dissent observes that plaintiff assisted his children with their weeknight homework assignments. According to the record, this occurred "sometimes" on the same evening that he took his children out to dinner. The dissent also observes that plaintiff conducted weekly science tutoring sessions for his son and worked on science projects in the basement. These sessions took place during a single school year, and it is unclear whether they occurred on a school night or during the weekend. Therefore, it is also unclear whether such sessions would be affected by the proposed change of school. Regardless, we do not take issue with the fact that plaintiff has been a good parent. Although the dissent feels the need to contrast defendant unfavorably with plaintiff, we merely believe that the additional 60-mile distance is not so far away that plaintiff cannot continue occasionally to take his children out to dinner and help them with their homework as he had sometimes done in the past.

6

established custodial environment they share with plaintiff should be minor, if at all.[5] This being the case, defendant's 60-mile move to Howell does not legally effect a change in the established custodial environment the children share with either plaintiff or defendant. Therefore, we agree with the Court of Appeals that the trial court's determination that the proposed change of schools would alter the established custodial environment was against the great weight of the evidence.

Because there is no change in the established custodial environment, the heightened evidentiary burden is not applicable, and defendant is required to prove by a preponderance of the evidence that the proposed change of schools would be in the best interests of the children, using the best-interest factors identified in MCL 722.23. However, the best-interest factors are geared toward general custody determinations, and many of these factors are simply irrelevant to particular "important decisions" affecting

_____

[5] In asserting that the established custodial environment would be modified if the children were to attend Howell schools, the dissent cites matters that are simply irrelevant in this case. For example, it asserts that the trial court's finding that the proposed change of schools would modify the established custodial environment is supported by the fact that plaintiff suffers from multiple sclerosis, which limits his prospects of finding employment closer to Howell and which required plaintiff to use a wheelchair during a recent vacation with the children. While we share the dissent's understandable solicitude for plaintiff and his handicap, there is no evidence to indicate that this handicap affects his custodial relationship with his children, and it has no bearing on the established custodial environment either as it is currently or as it would be if the children were to attend Howell schools. Finally, the dissent claims that defendant's asserted "irresponsibility" as a parent "bolsters" the trial court's finding that the proposed change of schools would modify the established custodial environment. While, if true, this may well constitute a relevant consideration in assessing whether the proposed change of schools would be in the children's best interests, it is considerably less relevant in assessing whether the proposed change would modify the custodial environment.

7

the welfare of a child. For instance, factor f, pertaining to the "moral fitness of the parties involved," MCL 722.23(f), while highly relevant in making a custody determination between parents, has no discernible bearing on determining whether a proposed change of school is in a child's best interests.

The trial court itself expressed frustration with the best-interest factors because many of these factors had nothing to do with the issue at hand. Despite this, the trial court felt obligated to consider factors that were wholly unrelated to the change-of-school issue. For example, the court determined that factor c, pertaining to the "capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs," MCL 722.23(c), favored plaintiff, focusing on the parties' disparity of income. The trial court observed that defendant had failed to make any effort to obtain full-time employment even though she claimed that job prospects were better in Howell. While disparity of income between the parties and defendant's asserted failure to secure full-time employment might be significant if the issue before the court involved a change of custody, these considerations have little or nothing to do with the change-of-school issue. The Court of Appeals addressed the scope of the best-interest factors in this context by concluding that "the court must narrowly focus its consideration of each best-interest factor on the specific 'important decision[] affecting the welfare of the child' that is at issue." *Pierron*, 282 Mich App at 252-253. We agree with this conclusion.

If a proposed important decision affecting the welfare of the child will not modify the established custodial environment, evaluating best-interest factors that are irrelevant to the particular issue before the court distracts from the proper focus of the proceeding and poses the risk that one parent's preference will prevail even though that preference is not in the best interests of the child.

Nevertheless, MCL 722.23 requires "the *sum total* of the . . . factors to be considered, evaluated, and determined by the court[.]" (Emphasis added.) In *Parent v Parent*, 282 Mich App 152; 762 NW2d 553 (2009), the Court of Appeals addressed this issue, also in the context of a dispute over a proposed change of school. Recognizing that even though each of the factors might not be relevant to the issue, MCL 722.23 requires consideration of "all" the factors, the Court held that "[t]he trial court must at least make explicit factual findings with regard to the *applicability* of each factor." *Id*. at 157 (emphasis added). We believe that this approach complies with MCL 722.23 and allows for the proper evaluation of whether an important decision is genuinely in the best interests of the children, in accordance with the Child Custody Act. Therefore, we hold that when a trial court is considering a decision that will not modify the established custodial environment, such as the change-of-school issue in this case, it must consider the applicability of all the factors. However, if the trial court determines that a particular factor is irrelevant to the immediate issue, it need not make substantive factual findings concerning the factor beyond this determination, but need merely state that conclusion on the record.

9

We also agree with the Court of Appeals that the trial court clearly erred on a major legal issue regarding factor i, "[t]he reasonable preference of the child, if the court considers the child to be of sufficient age to express preference," MCL 722.23(i). Although both children expressed a preference to attend Howell schools, it appears that the trial court refused to consider their preferences because neither child had ever attended a Howell school and, therefore, presumably lacked any factual basis on which to form a reasonable preference. Essentially, the trial court imposed a requirement of actual, firsthand experience, in this case with a Howell school, in order for the child's preferences to be valid. However, we agree with the Court of Appeals that factor i does not "require that a child's preference be accompanied by detailed thought or critical analysis" and that the "reasonable preference" standard merely "exclude[s] those preferences that are arbitrary or inherently indefensible." *Pierron*, 282 Mich App at 259. The trial court did not indicate that the children's stated preferences violated this minimal standard of reasonableness.

To summarize, when considering an important decision affecting the welfare of the child, the trial court must first determine whether the proposed change would modify the established custodial environment of that child. In making this determination, it is the child's standpoint, rather than that of the parents, that is controlling. If the proposed change would modify the established custodial environment of the child, then the burden is on the parent proposing the change to establish, by clear and convincing evidence, that the change is in the child's best interests. Under such circumstances, the trial court must consider all the best-interest factors because a case in which the proposed change would

10

modify the custodial environment is essentially a change-of-custody case. On the other hand, if the proposed change would *not* modify the established custodial environment of the child, the burden is on the parent proposing the change to establish, by a preponderance of the evidence, that the change is in the child's best interests. In addition, under those circumstances, although the trial court must determine whether each of the best-interest factors applies, if a factor does not apply, the trial court need not address it any further. In other words, if a particular best-interest factor is irrelevant to the question at hand, i.e., whether the proposed change is in the best interests of the child, the trial court need not say anything other than that the factor is irrelevant.

In this case, because we agree with the Court of Appeals that the proposed change of schools will not modify the established custodial environment,[6] we affirm the Court of Appeals' decision to vacate the trial court's order. However, even by a 'preponderance of the evidence' standard, this case presents a very close question with regard to whether attending Howell Schools is in the best interests of the children. It is clear that plaintiff is concerned about his children, is involved in their education, and provides guidance, structure, and discipline even when the children are not in his care. While the change of schools would not modify the established custodial environment, we recognize that the change of schools may, in fact, impair plaintiff's ability to be readily accessible to

---

[6] We emphasize that we do not hold here that a proposed change of school will *never* modify an established custodial environment. Rather, we merely hold that, under the specific facts of this case, this particular change of schools does not modify the established custodial environment.

provide guidance and structure. These facts, of course, are relevant to assessing where the interests of these children lie, and, on remand, we encourage the trial court to carefully consider all relevant factors when making this assessment. We remand to the trial court for further proceedings not inconsistent with this opinion.[7]

Marilyn Kelly
Michael F. Cavanagh
Elizabeth A. Weaver
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway

---

[7] We have considered defendant's post-argument motion to "correct the record, strike the response oral argument [sic] and the response brief [sic] of the plaintiff-appellant; to investigation [sic] into deception systematically perpretrated [sic] by the plaintiff-appellant; and for costs and sanctions against the plaintiff-appellant," and it is denied. However, defendant's motion contains over 25 specific allegations that plaintiff's counsel has "lied," "intentionally misled," "deceived," or been "manipulative" concerning the facts of this case. Additionally, defendant makes aspersions concerning the integrity of the attorney grievance process, and she has "noticed that the video tape of the oral argument in the State Bar's web cite [sic] was cleaned up a bit and can not be relied upon for the full record." We find all these allegations to be irresponsible and unsubstantiated. Therefore, costs of $250 are assessed against defendant's counsel in favor of plaintiff under MCR 7.316(D)(1)(b) for filing this vexatious motion.

STATE OF MICHIGAN

SUPREME COURT

TIMOTHY PIERRON,

       Plaintiff-Appellant,

v                                                              No. 138824

KELLY PIERRON,

       Defendant-Appellee.

_____

CORRIGAN, J. (*concurring in part and dissenting in part*).

I concur with the majority that when a trial court determines that an important decision affecting the welfare of a child would *not* modify the child's established custodial environment, all 12 best interest factors in MCL 722.23 may not be relevant to the specific decision before the court. I agree further that in such cases the trial court nonetheless must consider the applicability of all the statutory best interest factors and state its factual findings and conclusions regarding each relevant factor on the record. I acknowledge that this approach comports with the applicable provisions of the Child Custody Act, MCL 722.21 *et seq*.

I respectfully dissent, however, from the majority's conclusion that the established custodial environment between plaintiff father and the two minor children will not be modified in this case. After a six-day evidentiary hearing spanning 1,136 transcript pages and at least 54 exhibits, the trial court found that an established custodial environment existed with both parents and that defendant mother's unilateral decision to remove the

children from Grosse Pointe Public Schools and enroll them in Howell Public Schools would alter the children's established custodial environment with plaintiff. The record abundantly supports the trial court's findings. After scrutinizing the record, I am mystified by the majority's blanket endorsement of the Court of Appeals' conclusion that the trial court's finding was against the great weight of the evidence when the Court of Appeals failed to discuss what evidence clearly preponderated in the opposite direction. I am similarly perplexed by the majority's resistance to reviewing the evidence adduced and its related assertion that much of the evidence on the lower court record—evidence that the majority deems unnecessary to discuss—is irrelevant. The majority essentially second-guesses the trial court's findings regarding the existence of an established custodial environment with both parents and the destruction of the children's established custodial environment with plaintiff. The majority concludes that the children "spend the vast majority of their time" with defendant, so adjustments were merely to plaintiff's parenting time. I cannot join this distortion of the record before us. I further conclude that the result here does not conform to the highly deferential "great weight of the evidence" standard of review.

Numerous witnesses testified about the quality of Grosse Pointe and Howell Public Schools. Only plaintiff and defendant, however, testified about the modifications to plaintiff's parenting time and the established custodial environment as a result of the proposed school change. Defendant failed to squarely rebut plaintiff's testimony in this regard. Further, the testimony of the children's tutor, Deb Dixon, corroborated plaintiff's testimony about his strong interest in the children's education and his active involvement

2

in their daily lives. Under the great weight of the evidence standard, a reviewing court defers to the trial court's credibility determinations, and the trial court's factual findings should be affirmed unless the evidence clearly preponderates in the opposite direction. Because the record does not reveal that the evidence before the trial court clearly preponderated in the opposite direction, I would reverse the Court of Appeals' decision and reinstate the trial court's order directing that the children remain enrolled in Grosse Pointe Public Schools.

I have a firm conviction on the basis of my review of the record that the move to Howell will strip these children of two parents' involvement in their education and discipline, thereby relegating them to the care of a single parent, defendant mother.[1] That

---

[1] The trial court expressed a similar concern about enrolling the children in Howell Public Schools. While issuing its opinion from the bench in regard to best interest factor j, the trial court found in pertinent part:

> [Plaintiff] repeatedly stated his strong conviction that children need both parents actively involved in their lives. He felt the move to the Howell school district would impede his ability to participate in their educational and every day lives. Without both parents in their lives on a daily basis, [plaintiff] feels the children face a higher potential for failure. This is especially true in his opinion because Andrew struggles academically. He wants to be there for his son to help guide his educational development.

> [Defendant] feels [plaintiff] can still participate adequately from Grosse Pointe, but she did not otherwise address his concerns nor the general philosophy of the need for two parents to raise their children actively and on a daily basis.

As the following sample of testimony from the record illustrates, there is no basis to disturb the trial court's finding as against the great weight of the evidence:

3

- In response to whether Grosse Pointe Public Schools afforded his children with the best opportunities that he could offer them, plaintiff responded, "Yes, it is. I think it is. Is the school system better? Yes. Is that all that matters? No, you need both parents. You need both parents working together. But honestly with one parent doing [sic] out in Howell is not going to work with them."

- In response to the potential impact of the children attending Howell Public Schools, plaintiff stated, "I'm vastly concerned about what these kids are going to do in school. Even if they are straight A students in Howell, I'm not sure if that's going to be enough; but I honestly, I doubt they'll be straight A students in Howell. They're going to be even worse than they were in Grosse Pointe. With only Kelly doing it and not two parents, they're going to fail. And that's my biggest fear is they're not what—that's my biggest fear is they're failing if they go to Howell."

- In response to whether enrolling Andrew in Howell Public Schools would ease the stress on plaintiff and Andrew's relationship, plaintiff responded, "No. My assumption if he is going to attend Howell school[s], I will lose contact with him and it's going to be heinous. Kelly raised Ian by herself. There was no other father for Ian there. And what happened to Ian? He flunked out. You're going to take my kid and put him in Howell schools without a father. And Howell schools, we're arguing this, but you know what, Howell schools is [sic] not better than Grosse Pointe schools. And so you're going to take my child and put him in a school system that's not as good and what's going to happen to him? Ian is smarter than Andrew. And Ian flunked out. What's going to happen to Andrew in Howell schools?"

- In response to how attending Howell Public Schools would affect the children's family relationship with plaintiff, plaintiff explained, "I will see them less. We cannot do the overnight visits. I will see them intermittently on weekends. When they're living in Grosse Pointe around the block, I saw them routinely on weekends. Now I'm seeing them every once in a while and it takes a fight over the phone with Kelly."

- In response to whether plaintiff was willing to work for a relationship with the children's friends in Howell, plaintiff stated, "I will do anything to keep my relationship with my kids. I don't know if it's going to be possible though because, if she is living in Howell, the friends are in Howell, how—as your example, how are you going to pick up their friends and drive the friends down for two hours to spend time with me, and then drive them back? . . . I don't know how many parents are going to have their friends—their kids go to see—go spend

4

parent seems quite inattentive to the children's needs. Further, her proposal to enroll the children in a new school district appears to be based on her desire to relocate, and not what is in the children's best interests. Modifying the status quo and enrolling the children in Howell Public Schools is a decision reflecting defendant's best interests to be sure, but not the best interests of the parties' two minor children.

## I. FACTS AND PROCEDURAL HISTORY

As the majority explains in part, plaintiff and defendant had two children during their marriage, Andrew (born 5/6/1994) and Madeline (born 1/25/99).[2] When the parties divorced in 2000, the judgment of divorce awarded joint legal custody. With regard to educational decisions, the judgment provided:

> As joint legal custodians, each parent shall have equal decision-making authority with respect to matters concerning . . . education. Both parents shall be fully informed with respect to the children's progress in school and shall be entitled to participate in all school conferences, programs and other related activities in which parents are customarily involved. Both parents shall have full access to the children's school records, teachers, counselors, and to their medical records and health care providers.

---

a weekend at some other man's house. In Grosse Pointe, I know the parents. I spend time with the parents. I see them at the PTA meetings. We have relationships."

[2] Defendant also has a child from a previous relationship, Ian. The record does not establish Ian's date of birth, but the testimony indicates that he was 18 years old at the time of the evidentiary hearing and resided with defendant while attending community college.

Additionally, the judgment of divorce granted defendant primary physical custody but awarded plaintiff "reasonable and liberal parenting time . . . which shall include alternate weekends, alternate holidays, time during school and summer vacations, and as otherwise agreed between the parties." In 2001, an amended judgment of divorce entered. Consistent with the original judgment of divorce, the amended judgment stated that "the parties shall have joint legal custody and shared parenting time" and that defendant's residence "continues as primary residence." The parenting time provision was modified to provide greater flexibility. It stated that plaintiff's parenting time "shall include overnights and all mutually agreeable times, including first option of parenting time when and if [defendant] resumes and/or returns to full time employment or continued education that requires night classes."

After the divorce, plaintiff, defendant, and the children lived in Grosse Pointe Woods, where the children had resided since birth. Defendant and the children lived less than six blocks from plaintiff's home. The children's paternal grandparents, with whom they share a close and loving bond, also resided in Grosse Pointe. Upon reaching school age, the children both attended Grosse Pointe Public Schools. Madeline's elementary school was located 0.25 miles from plaintiff's home and 1.1 miles from defendant's home. Andrew's middle school was located 1.4 miles from plaintiff's home and 1.2 miles from defendant's home.

Despite his demanding radiology practice, plaintiff played an active role in the children's education: attending school concerts and ice cream socials, helping the children with homework on school nights, staying in contact with teachers, and arranging

for a private tutor for the children when they struggled academically. In April 2005, plaintiff was forced to seek judicial intervention to obtain private tutoring for Andrew after defendant rejected the idea. Defendant was comparatively less involved in the children's education even though she was essentially a stay-at-home parent who occasionally did upholstery work and taught figure skating.[3] Additionally, the children participated in various extracurricular activities in Grosse Pointe, including band, archery, figure skating, and dance. Plaintiff, defendant, and the children's paternal grandparents assisted in transporting the children and encouraging their involvement in extracurricular activities. For certain extracurricular activities, including Madeline's dance classes, plaintiff and the children's paternal grandmother handled all the transportation. The children also attended church with plaintiff and their paternal grandparents.

In April 2007, without notifying plaintiff, defendant offered to purchase a condominium in Howell.[4] At the time, the only individual whom defendant knew in Howell was her on-again, off-again boyfriend of five years.[5] After learning of

---

[3] Although defendant graduated from a four-year university with a degree in science and a certificate in social work, she stopped working when she married plaintiff. At the time of the evidentiary hearing, defendant confirmed that she did not have a job and that she no longer did upholstery work or taught figure skating. Defendant primarily subsisted on approximately $28,000 a year in tax-free child support from plaintiff.

[4] Howell is located approximately 60 miles from Grosse Pointe Woods.

[5] Defendant's sister lived in Cohoctah Township and defendant's mother lived in West Bloomfield. According to defendant, it took approximately 25 minutes to drive from the condominium in Howell to her sister's home in Cohoctah Township.

defendant's actions, plaintiff proposed that defendant purchase his single family home in Grosse Pointe Woods for the same price that she offered for the condominium in Howell. Plaintiff's proposal would have given defendant more than $100,000 in free equity. Plaintiff also attempted to negotiate a parenting time schedule with defendant. Defendant either rejected or did not respond to any of plaintiff's proposals. In June 2007, defendant moved to Howell. Contrary to the terms of the judgment of divorce granting equal decision-making with regard to education, defendant enrolled the children in Howell Public Schools. In July 2007, plaintiff filed a motion opposing the proposed change of schools, asserting that the "unilateral decision to move the children more than an hour from [p]laintiff's home and completely uproot them from their school district" would violate the judgment of divorce and modify the children's established custodial environment.[6] Plaintiff offered to pay for a rental home for defendant and the children during the pendency of the proceedings, but defendant refused plaintiff's offer.

During September and October 2007, the trial court conducted a six-day evidentiary hearing to determine whether the proposed change of schools was in the best interests of the children. At the conclusion, the court issued a 27-page opinion from the

---

[6] Since the proposed change of schools first became an issue, the record reveals steadily increasing levels of acrimony between the parties and their respective counsel. This acrimony is aptly illustrated in defendant's post-argument motion to "correct the record, strike the response oral argument [sic] and the response brief [sic] of the plaintiff-appellant; to investigation [sic] into deception systematically perpretrated [sic] by the plaintiff-appellant; and for costs and sanctions against the plaintiff-appellant." I wholly concur with the majority's decision to deny defendant's motion and sanction defendant's counsel pursuant to MCR 7.316(D)(1)(b) for filing a vexatious motion.

8

bench with a detailed consideration of the evidence. The court noted the governing burdens of proof. The party seeking to implement a school change has the burden of establishing by a preponderance of the evidence that the change is in the child's best interests. If, however, the proposed school change will affect the child's established custodial environment, the moving party has the heightened burden of persuading the court by clear and convincing evidence. The trial court found that both parents had an established custodial environment with their children. Because the trial court determined that the proposed school change would affect the parties' agreed-upon parenting time schedule and modify the children's established custodial environment "of flexibility and continued involvement" with plaintiff, defendant had the burden of persuading the trial court that the school change was in the children's best interests. After a careful review of the evidence and discussion about all 12 statutory best interest factors, the trial court concluded that defendant had failed to establish that the proposed change was in the children's best interests under either the clear and convincing evidence standard or the less rigorous preponderance of the evidence standard. Accordingly, the trial court ordered that the children remain enrolled in Grosse Pointe Public Schools. Soon thereafter, the trial court denied defendant's motion for reconsideration.

Defendant appealed by right, arguing that the trial court had applied the incorrect standard of review, misunderstood the applicable law, and made factual findings against the great weight of the evidence. Defendant also challenged the trial court's findings regarding statutory best interest factor i (reasonable preference of the child).

9

The Court of Appeals vacated the trial court's order, concluding that the trial court had erred by finding that the proposed school change would modify the children's established custodial environment with plaintiff because "only minor modifications to plaintiff's parenting time" would be required.[7] The Court further held that the trial court had made factual findings against the great weight of the evidence regarding statutory best interest factors a (love, affection, and other emotional ties existing between the parties involved and the child) and h (home, school, and community record of the child). Additionally, the Court concluded that the trial court had committed clear legal errors regarding factors b (capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion), c (capacity and disposition of the parties involved to provide the child with food, clothing, medical care or remedial care, and other material needs), e (permanence, as a family unit, of the existing or proposed custodial home or homes), and i (reasonable preference of the child).[8] After opining that "defendant likely satisfied her burden of proof on the change-of-school issue in this case,"[9] the Court remanded the case for reevaluation of the proposed school change issue under the preponderance of the evidence standard.

---

[7] *Pierron v Pierron*, 282 Mich App 222, 249; 765 NW2d 345 (2009).

[8] *Id*. at 253-260.

[9] *Id*. at 261.

10

Plaintiff then applied for leave to appeal in this Court. We granted plaintiff's application and directed the parties to address whether (1) defendant's decision to enroll the children in Howell Public Schools, which is 60 miles from their former school district and from plaintiff's home, resulted in a change in the custodial environment; (2) the clear and convincing evidence standard or the preponderance of the evidence standard governed defendant's burden of proof; (3) defendant demonstrated that the school change was in the children's best interests; and (4) the children's preference for Howell Public Schools was "reasonable."[10]

## II. RELEVANCE OF STATUTORY BEST INTEREST FACTORS

I agree that in child custody disputes where the established custodial environment would *not* be modified, a trial court need not state its factual findings and conclusions regarding any statutory best interest factor that is irrelevant to the specific important decision under review. Further, I agree that requiring trial courts to evaluate best interest factors that are plainly irrelevant to a specific decision distracts from the overriding focus in any child custody dispute—namely, what is in the child's best interest. Consequently, I concur with the general approach set forth by the majority, but I emphasize that this approach is limited to those cases in which the proposed important decision would *not* modify the child's established custodial environment.[11]

---

[10] 483 Mich 1135 (2009).

[11] As the amicus curiae brief of the Family Law Section of the State Bar of Michigan observes, if the established custodial environment would be modified by the proposed important decision, the trial court, as a practical matter, could be addressing a

11

An established custodial environment exists "if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c). The Legislature has instructed courts to consider "[t]he age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship" in analyzing whether the custodian and child share an established custodial environment. *Id.* In child custody disputes between parents, "the best interests of the child control." MCL 722.25; see *Ireland v Smith*, 451 Mich 457, 466; 547 NW2d 686 (1996) ("In all events, however, the best interests of [the child], not of [the parents], are central."). The Legislature has stated that the "sum total" of 12 factors provides the basis for courts to consider, evaluate, and determine whether an important decision is in "the best interests of the child." MCL 722.23.[12] After carefully considering the whole situation, a trial

---

possible change in custody, which would necessitate a full review of the child's custodial placement pursuant to the best interest factors listed in MCL 722.23.

[12] Specifically, MCL 722.23 provides:

As used in this act, "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care

court may determine that certain factors are plainly irrelevant to the particular decision before the court. In such cases, a trial court not only must state its factual findings and conclusions regarding each relevant best interest factor on the record, but it also must expressly state its conclusion regarding the irrelevance of any remaining factors. See *Parent v Parent*, 282 Mich App 152, 156-157; 762 NW2d 553 (2009).

By distinguishing applicable and inapplicable best interest factors in child custody disputes where the established custodial environment would *not* be modified, a trial court can create a sufficient record for meaningful appellate review while focusing its analysis

recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

on the important decision at issue and how that decision will affect the welfare of the child. Accordingly, I concur with this aspect of the majority opinion.

### III. GREAT WEIGHT OF THE EVIDENCE STANDARD AS APPLIED

Although I agree with the majority about the threshold applicability determination of the statutory best interest factors where the established custodial environment would *not* be modified, I disagree that the children's established custodial environment with plaintiff would not be modified under these facts. The trial court properly found that the proposed school change from Grosse Pointe to Howell would modify the children's established custodial environment with plaintiff.[13] After scrutinizing this voluminous record, I conclude that plaintiff father was far more than a "weekend parent" and that defendant's unilateral decision to enroll the children in a new school district approximately 60 miles from their lifelong school district and home would modify the established custodial environment that the children share with plaintiff.[14] The evidence

---

[13] I commend the trial court for doing an exemplary job in presiding over the convoluted evidentiary hearing before it.

[14] The majority seems to view the 60-mile distance between Howell and Grosse Pointe, which is less than 100 miles, as a presumptive basis to contravene the trial court's factual finding that the children's established custodial environment with plaintiff would be modified. The 60-mile distance itself did not preclude the trial court from finding that the children had an established custodial environment with both parents and that enrolling the children in Howell Public Schools would modify the established custodial environment with plaintiff. Moreover, contrary to the Court of Appeals, I do not read MCL 722.31(1) as implicitly providing that "a custodial parent *may* move a child's residence by *less* than 100 miles without first obtaining permission from the court or consent from the other party." *Pierron*, 282 Mich App at 245. Instead, the explicit statutory language is the best means to ascertain and give effect to the Legislature's intent. MCL 722.31(1) provides in part that "a parent of a child whose custody is

14

did not clearly preponderate against the trial court's findings, and the Court of Appeals' application of the great weight of the evidence standard constituted error requiring reversal. Consequently, I dissent from the majority's endorsement of the Court of Appeals' opinion in this regard.

MCL 722.28 enumerates the three relevant standards of review in child custody cases.[15] "Findings of fact are to be reviewed under the 'great weight' standard, discretionary rulings are to be reviewed for 'abuse of discretion,' and questions of law for 'clear legal error.'" *Fletcher v Fletcher*, 447 Mich 871, 877; 526 NW2d 889 (1994). Under the great weight of the evidence standard, "a reviewing court should not substitute its judgment on questions of fact unless they 'clearly preponderate in the opposite

---

governed by court order shall not change a legal residence of the child to a location that is more than 100 miles from the child's legal residence at the time of the commencement of the action in which the order is issued." The Legislature has demonstrated its ability to include specific statutory presumptions in the Child Custody Act. See, e.g., MCL 722.27a(1) ("It is presumed to be in the best interests of a child for the child to have a strong relationship with both of his or her parents."). However, the Legislature did not draft a presumption in MCL 722.31(1) that when parents share joint legal custody, a relocating parent's unilateral decision to move a child's legal residence less than 100 miles is presumed not to modify the child's established custodial environment with his or her other parent. Consequently, I cannot conclude that the distance itself creates a presumption that a change in legal residence of less than 100 miles will not modify to whom the children look "for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c).

[15] MCL 722.28 provides:

To expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.

direction.'" *Id*. at 878, quoting *Murchie v Std Oil Co*, 355 Mich 550, 558; 94 NW2d 799 (1959). Moreover, a reviewing court should defer to the trial court's credibility determinations. *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). As *Fletcher* states, "[t]he great weight standard of review allows [for] a meaningful yet deferential review . . . ." *Fletcher*, 447 Mich at 878.

After the evidentiary hearing, the trial court concluded that defendant's proposal to enroll the children in Howell Public Schools, approximately 60 miles away from their current school district and plaintiff's home in Grosse Pointe Woods, would affect the existing parenting time schedule and modify the children's established custodial environment. The trial court found that if the children were enrolled in Howell Public Schools, overnight visits on weeknights and first option parenting time for plaintiff would no longer be practical.[16] Further, the trial court concluded that the children's established custodial environment with plaintiff was one "of flexibility and continued involvement" and that the testimony established that plaintiff "was involved on a continuing basis with [the] children's education." The trial court cited testimony establishing that plaintiff "visited the schools regularly, took the children to lunch on occasions, picked them up

---

[16] The majority acknowledges that a review of the record reveals "some testimony indicating that the children occasionally stayed overnight with plaintiff on some school nights" after the instant action was filed, but the majority presumes that these weeknight overnight visits only occurred "to reduce the amount of time that the children spent traveling between Howell and Grosse Pointe Woods." Nothing in the record supports this statement. In light of the majority's concession that some weeknight overnight visits were occurring, I am perplexed by the majority's related conclusion that "it was error for the trial court to consider the provision allowing weeknight, overnight visits without also considering that these visits were not occurring."

16

from tutoring, and saw them regularly despite the absence of a specific parenting time schedule."

The majority cites *Brown v Loveman*, 260 Mich App 576, 595; 680 NW2d 432 (2004), for the proposition that "[i]f the required parenting time adjustments will not change who the child naturally looks to for guidance, discipline, the necessities of life, and parental comfort, then the established custodial environment will not have changed." Ironically, *Brown* concluded that the modification in parenting time in that case "necessarily would amount to a change in the established custodial environment, requiring analysis under the best interest factor framework." *Id.* at 596. Other Court of Appeals decisions have cited *Brown* for the proposition that if a proposed move would relegate an "equally active" parent to the more circumscribed role of "weekend" parent, the parenting time modification would amount to a change in the established custodial environment. See *Powery v Wells*, 278 Mich App 526, 528; 752 NW2d 47 (2008). Such reasoning is equally instructive here because the proposed school change would alter the extent to which the children look to plaintiff "for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c).

The majority also describes the Court of Appeals as concluding that the trial court's finding was against the great weight of the evidence because "the distance of the new schools from plaintiff's home would only require relatively minor adjustments to plaintiff's parenting time." I am mystified by this holding on the record before us. Plaintiff testified in great detail about the modifications to his parenting time and the established custodial environment that would result from the proposed school change.

17

Defendant failed to squarely rebut plaintiff's testimony in this regard. Contrary to the Court of Appeals' view, the salient issue is the impact of the proposed school change on plaintiff's ongoing involvement with the children's educational and everyday lives, not the distance between the school districts. See note 1 of this opinion. I find no basis to conclude that the trial court's finding was against the great weight of the evidence. Instead, ample evidence supported the trial court's finding that the children's established custodial environment would be modified if the proposed school change occurred.

To illustrate, without discussing contradictory evidence, the Court of Appeals summarily concluded, "[t]he mere 60-mile distance between Howell and Grosse Pointe Woods would not be a substantial barrier to plaintiff's continued parenting time, and the mere change of school districts would not necessarily alter or materially reduce plaintiff's opportunity to exercise visitation with the minor children."[17] The trial court, however, heard testimony about myriad ways in which the proposed school change would modify the children's established custodial environment. I concur with the trial court's finding that the distance factor would impinge on plaintiff's ability to provide educational guidance and discipline for the children.

Plaintiff, for example, testified in great detail about the proposed school change hindering his ability to see the children flexibly during and after school on weekdays. While the children attended Grosse Pointe Public Schools, plaintiff could take them to breakfast before school or to lunch during school depending on his work schedule.

---

[17] *Pierron*, 282 Mich App at 250.

Plaintiff routinely took the children out to dinner on Thursdays after he picked them up from tutoring. Further, plaintiff personally worked with the children on their weeknight homework assignments. At one point, plaintiff created a special weekly science tutoring session for Andrew during which Andrew and plaintiff did science projects in plaintiff's basement. Plaintiff also described instances where he had been able to attend daytime school functions. For example, a graduation ceremony for Andrew was scheduled during plaintiff's regular workday. Because the school was near the office where plaintiff's radiology group practiced, he was able to attend. The move to Howell would impede this midday and weeknight availability. Additionally, plaintiff testified that his concern about remaining involved in his children's daily lives led him to explore relocating to Howell and finding employment closer to the children, but his multiple sclerosis limited his ability to find a comparable position elsewhere.[18] Although plaintiff stated that he had not taken a sick day in 10 years, plaintiff admitted that, because of his multiple sclerosis, he needed to use a wheelchair during a recent vacation with the children. The testimony about plaintiff's efforts to relocate and his multiple sclerosis further supports the trial court's finding that the children's established custodial environment with plaintiff would be modified by the proposed school change.

Further, defendant testified that she listed plaintiff as an emergency contact on forms filed with the Howell Public Schools. Yet, defendant listed plaintiff as the third

---

[18] Plaintiff was diagnosed with multiple sclerosis in 1993.

emergency contact after defendant and two other individuals.[19] In contrast, during the evidentiary hearing, both plaintiff and defendant immediately responded when Andrew truanted from school in Grosse Pointe. Defendant testified that it took about 90 minutes to travel from Grosse Pointe to Howell in rush hour traffic. When asked whether plaintiff would have problems being involved with the children's education in Howell, defendant responded no. She suggested that plaintiff keep in touch over the computer or telephone. The evidence establishing plaintiff's ongoing personal involvement with the children and their education in Grosse Pointe belies defendant's suggestion. This testimony also supports the trial court's finding that the proposed school change would modify the children's established custodial environment with plaintiff.

Additionally, the record reveals defendant's troubling lack of personal responsibility for and interest in the children's education. Defendant, for example, professed that she did not need to attend Andrew and Madeline's parent-teacher conferences because she had attended conferences with her older son Ian. By contrast, plaintiff regularly attended parent-teacher conferences and was known by the school staff. Defendant also admitted that she received a letter from the school district when Madeline had amassed 27 tardy reports at school while living in her home. Although defendant stated that she had resolved the problem by taking away Madeline's computer

---

[19] On the same form, defendant identified herself as the children's legal guardian, but she failed to mark either yes or no to identify plaintiff as the children's other legal guardian.

time, Madeline nevertheless went on to accrue a total of 72 tardy reports for the school year, which is remarkable since the average school year is about 180 days.

Andrew had a similar problem, accumulating numerous reports of tardiness and absences. In one school year alone, Andrew amassed 90 absences from class and 28 tardy reports. Plaintiff described an instance where he came to pick up Madeline from school only to be told by Madeline's teacher that Madeline had not attended at all. When plaintiff called defendant, he spoke to Andrew. Andrew informed plaintiff that he had overslept in the morning, and, as a result, Andrew failed to wake defendant and Madeline so that the children could make it to school that day. The record reflects that Andrew, and not defendant, was responsible for the children's morning routine. These incidents reflect defendant's persistent inattentiveness to her children's educational needs and the crucial role played by plaintiff in the children's daily lives.

After defendant forced plaintiff to obtain a court order to arrange academic tutoring for Andrew, plaintiff sought the services of Deb Dixon on the basis of the recommendation of Andrew's teacher. Dixon testified that she had 11 years of experience working as an academic tutor with more than 150 students, in addition to her previous career experience as a German teacher and guidance counselor at a local high school. She confirmed that plaintiff paid for the twice-weekly tutoring sessions, first to help Andrew with reading and later to help Madeline with reading and phonics. Moreover, Dixon testified that plaintiff would consistently inquire about the children's academic progress when he transported the children to and from tutoring, even calling Dixon periodically for updates. In contrast, defendant did not regularly speak to Dixon.

21

Oftentimes, Dixon would go out to plaintiff's vehicle to tell plaintiff how the children had done. According to Dixon, defendant canceled tutoring sessions and did not display the amount of concern about Madeline's reading progress that one would expect of a parent. Defendant also suggested that her 18-year-old son Ian would be an appropriate math tutor for Andrew, even though Ian graduated from high school with a 1.8 grade point average and was not permitted to attend his high school commencement. Perplexingly, defendant also testified that "Ian is lazy, and he's paid for it by going to community college instead of the college of his choice where his friends went." Viewed together, the evidence regarding defendant's demonstrable irresponsibility and lack of interest in the children's education not only illustrates the importance of keeping plaintiff actively involved in the children's education, but it also bolsters the trial court's conclusion that the proposed school change would modify the children's established custodial environment.

The record supports the trial court's finding that the children had an established custodial environment "of flexibility and continued involvement" with plaintiff and that the proposed school change would modify that environment. From the children's perspective, their established custodial environment would be modified if they enrolled in Howell Public Schools. As a practical matter, plaintiff would be relegated to the role of "weekend parent." Plaintiff specifically testified about the importance of the children needing two parents, stating that if defendant enrolled the children in Howell Public Schools, "it will truly be a single parent raising the kids." Although the Court of Appeals attempted to minimize the impact of the proposed school change on the children's

22

established custodial environment with plaintiff, the Court of Appeals cited no evidence that clearly preponderated against the trial court's finding. Because the trial court's finding was not against the great weight of the evidence, I dissent.

## IV. CONCLUSION

I concur in the principle that if a proposed change would *not* modify the established custodial environment, the trial court not only must determine the applicability of all 12 best interest factors, but it also must address each factor that is relevant to the specific issue before the court. With regard to this case, however, I conclude that the trial court's finding that the proposed school change would modify the children's established custodial environment with plaintiff did not violate the great weight of the evidence standard. Accordingly, I would reverse the Court of Appeals' decision and reinstate the trial court's order directing that the children remain enrolled in Grosse Pointe Public Schools.

Maura D. Corrigan

23