IRELAND v SMITH

Docket Nos. 104950, 104951. Decided May 21, 1996. On application by the
defendant for leave to appeal, the Supreme Court, in lieu of grant-
ing leave, modified the judgment of the Court of Appeals, and
remanded the case to the circuit court for further proceedings.

Jennifer Ireland brought an action in the Macomb Circuit Court
against the father of her child, Steven Smith, seeking child support.
The court, Raymond R. Cashen, J., found that each of the statutory
factors for determining the best interests of the child weighed
evenly between the parties, but that factor e, the permanence, as a
family unit, of the existing or proposed custodial home, heavily
favored the defendant. The court contrasted the stability of contin-
ued residence with the defendant, who lived with his parents, with
the occasional moves it deemed likely as the plaintiff, a university
student, continued her education. It also cited the demands on her
as she sought to raise a child, who attended a university-approved
day-care center, before ordering that the defendant be given cus-
tody of the child. The Court of Appeals, NEFF, P.J., and GRIBBS and
R. D. GOTHAM, JJ., set aside the order, finding that the circuit court
erred in determining that factor e favored the defendant, and
remanded the case for further consideration, retaining jurisdiction.
In addition, it disqualified the trial judge from further participation
(Docket Nos. 177431, 182369). The defendant seeks leave to appeal.

In an opinion per curiam, signed by Chief Justice BRICKLEY, and
Justices CAVANAGH, BOYLE, RILEY, MALLETT, and WEAVER, the Supreme
Court held:

The decision of the Court of Appeals to remand the case to the
circuit court is affirmed. The circuit court erred in finding that fac-
tor e heavily favored the defendant.

1. The focus of factor e is the child's prospects for a stable fam-
ily environment. When a court considers factor e, it must weigh all
the facts that bear on whether the plaintiff or the defendant can
best provide the child the benefits of a custodial home that is
marked by permanence as a family unit.

2. Actual and proposed child-care arrangements, whether in the
custodial home or elsewhere, are proper considerations in a cus-
tody case. Placement of a child in a good day-care setting can have

many benefits and is in no sense a sign of parental neglect. There can be no broad rules that dictate a preference for one manner of child care over another. The court must examine each situation and determine what is in the best interests of the child.

3. In this case, no significant difference between the stability of the settings proposed by the two parties can be discerned. In all events, the best interests of the child, not those of Ms. Ireland or Mr. Smith, are central. When, on remand, the court turns to factor e, it must weigh all the facts that bear on whether Ms. Ireland or Mr. Smith can best provide the child the benefits of a custodial home that is marked by permanence as a family unit. On remand, the circuit court is to review the entire question of custody by considering all the statutory factors and conduct whatever hearings or other proceedings are necessary to allow it to make an accurate decision concerning a custody arrangement that is in the best interests of the child.

Affirmed, modified, and remanded.

Justice LEVIN concurred only in the result.

214 Mich App 235; 542 NW2d 344 (1995) modified.

*Julie Kunce Field* for the plaintiff.

*Sharon-Lee Edwards* for the defendant.

PER CURIAM. This is a custody dispute. Following a hearing, the circuit court ordered that the defendant father be given custody of the parties' minor child. The Court of Appeals set aside the circuit court order and remanded the case for further proceedings before a different judge. The Court of Appeals retained jurisdiction. We approve the remand ordered by the Court of Appeals, though we modify the accompanying directions.

I

In their mid-teens, plaintiff Jennifer Ireland and defendant Steven Smith conceived a child, Maranda, who was born in 1991. The parties did not marry, but continued living with their respective parents while they completed high school. After initially planning to

put the baby up for adoption, Ms. Ireland decided instead to keep her. The child lived with Ms. Ireland and her mother in Mount Clemens.

After a time, Mr. Smith began visiting the child and providing a few items for her care. However, Maranda continued to live with her mother and maternal grandmother, who provided nearly all the necessary support.

In January 1993, Ms. Ireland began an action to obtain child-support payments from Mr. Smith. She also obtained an ex parte order that granted her continuing custody of Maranda.

Ms. Ireland enrolled as a scholarship student at the University of Michigan in Ann Arbor for the fall semester of 1993. She and Maranda lived in the university's family housing unit. On weekdays, Maranda attended a university-approved day-care center.

During this period, Mr. Smith remained at his parents' home. He evidently continues to live with them.

In May and June 1994, the circuit court conducted a trial regarding the issue of custody. It would be difficult to exaggerate the extent to which the parties disagreed with regard to the proper setting for Maranda. Each produced witnesses who spoke very disparagingly of the other, and there was little agreement about the facts of this matter.

Following the hearing, the circuit court issued an opinion in which it discussed each of the statutory factors for determining the best interests of the child.[1] The court found that each of the statutory fac-

---

[1] As used in this act, "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:

tors weighed evenly between the parties, except factor e, which concerns:

The permanence, as a family unit, of the existing or proposed custodial home or homes.

The circuit court found that factor e "heavily" favored Mr. Smith. It contrasted the stability of continued residence with Mr. Smith and his parents with the occasional moves that were likely as Ms. Ireland continued her education. In an extended discussion of this factor, the court also noted the demands that would be imposed on Ms. Ireland as she sought both to raise a child and attend the university.

---

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute. [MCL 722.23; MSA 25.312(3), as amended by 1993 PA 259.]

For those reasons, the circuit court ordered that Mr. Smith be given custody of Maranda. Ms. Ireland appealed,[2] and the Court of Appeals entered a stay.

Issues concerning visitation remained in circuit court. Those proceedings included entry of an order denying Ms. Ireland's motion to disqualify the trial judge. From that order, she filed a second appeal.

The Court of Appeals consolidated the appeals, and decided the case in a single opinion. 214 Mich App 235; 542 NW2d 344 (1995). The Court of Appeals agreed with the circuit court that Ms. Ireland had provided an established custodial environment.[3] However, it found that the circuit court had erred in determining that factor e favored Mr. Smith. The Court of Appeals upheld the circuit court's determination that the other statutory factors favored neither party.

The Court of Appeals remanded the case for further consideration, retaining jurisdiction. The Court also disqualified the trial judge from further participation in this matter.

Mr. Smith has applied to this Court for leave to appeal.[4]

II

In the central portion of its analysis, the Court of Appeals first explained its conclusion that the eviden-

---

[2] Mr. Smith cross-appealed, asserting that the court erred in failing to find all the factors to be in *his* favor.

[3] Where an established custodial environment exists, custody may not be changed unless there is "clear and convincing evidence that [a change] is in the best interest of the child." MCL 722.27(c); MSA 25.312(7)(c).

[4] Ms. Ireland has filed motions for immediate consideration and for stay, concerning a visitation dispute in circuit court. We grant immediate consideration and deny the stay.

tiary record did not support a factual finding that factor e favored Mr. Smith:

> We find no support in the record for the trial court's speculation that there is "no way that a single parent, attending an academic program at an institution as prestigious as the University of Michigan, can do justice to their studies and to raising of an infant child." The evidence shows that the child has thrived in the university environment. Defendant concedes that he has no complaint about the university day care, and the trial court recognized that the child has had a "meaningful experience" there. The trial court found plaintiff's day-care arrangements "appropriate," but concluded that defendant's plan to have his mother baby-sit was better for the child because she was a "blood relative" rather than a "stranger." Both parties will necessarily need the help of other people to care for their child as they continue their education and employment, and eventually their careers. In light of undisputed evidence that plaintiff's child-care arrangements are appropriate and working well, the evidence does not support the trial court's judgment that defendant's proposed, but untested, plans for the child's care would be better. [214 Mich App 245-246.]

The Court of Appeals then explained that the circuit court had committed an error of law in its application of factor e. Observing that the factor concerns "permanence" of the custodial home, not its "acceptability," the Court stated:

> Moreover, an evaluation of each party's arrangements for the child's care while her parents work to go to school is not an appropriate consideration under this factor. We find the trial court committed clear legal error in considering the "acceptability" of the parties' homes and child-care arrangements under this factor, which is directed to the "permanence, as a family unit," of the individual parties. "This factor exclusively concerns whether the family unit will remain intact, not an evaluation about whether one custodial home would be more acceptable than the other."

See *Fletcher v Fletcher*, 200 Mich App 505, 517; 504 NW2d
684 (1993). Our Supreme Court affirmed this Court's opin-
ion on this issue, 447 Mich 871, 884-885 [526 NW2d 889]
(1994), stating, "We agree with the Court of Appeals. The
facts relied upon and expressed by the judge relate to
acceptability, rather than permanence, of the custodial
unit." [214 Mich App 246.]

Finally, the Court of Appeals provided direction for
the proceedings on remand:

> On remand, the trial court is to consider "up-to-date
> information" regarding this factor, as well as the fact that
> the child has "been living with the plaintiff during the
> appeal and any other changes in circumstances arising
> *since the trial court's original custody order.*" *Id.*, empha-
> sis added. The trial court is not, however, to entertain or
> revisit further "evidence" concerning events before the trial
> in May and June 1994. See *id.* [214 Mich App 247.][5]

### III

We affirm the decision of the Court of Appeals to
remand this case, and we agree that the circuit court
erred in finding that factor e heavily favored Mr.
Smith. However, we write to clarify the analysis and
modify the terms of the remand.

### A

First, there is the issue how properly to understand
factor e.[6] As the Court of Appeals observed, we dis-
cussed this factor in *Fletcher*, where we explained:

---

[5] An accompanying order, issued on the same day as the opinion, sup-
plied further direction for proceedings on remand.

[6] This is an issue of law. In *Fletcher*, we explained:

> By its terms, [MCL 722.28; MSA 25.312(8)] distinguishes among
> three types of findings and assigns standards of review to each.

Factor e requires the trial court to consider "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes." MCL 722.23(e); MSA 25.312(3)(e). In the instant case, the trial court focused on the *"acceptability* of the custodial home," as opposed to its permanence. It stated its findings as follows:

"The Court is satisfied that either parent would provide permanence, as a family unit, and would offer acceptable custodial homes. It is undisputed that plaintiff as a father is accustomed to and willing to preform [sic] the day to day jobs to maintain a household. The Court feels that some weight should be assigned in favor of plaintiff because the evidence shows that defendant had been out of the home in the evening many times and thus not caring for the family while plaintiff has been present on those occasions."

Because acceptability of the home is not pertinent to factor e, the panel found that it was legal error for the trial court to consider it. We agree with the Court of Appeals. The facts relied upon and expressed by the judge relate to acceptability, rather than permanence, of the custodial unit. Therefore, the trial court's error seems to go beyond mere word choice. [447 Mich 884-885.]

We adhere to that explanation. The Legislature has provided twelve statutory factors, of which the first eleven (a through k) concern specific aspects of the family situation.[7] Among them are factors d and e:

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

---

Findings of fact are to be reviewed under the "[against the] great weight of [evidence]" standard, discretionary rulings are to be reviewed for "abuse of discretion," and questions of law for "clear legal error." [447 Mich 877.]

[7] Factor l is a catch-all, encompassing "[a]ny other factor considered by the court to be relevant to a particular child custody dispute."

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

These factors are phrased somewhat awkwardly,[8] and there clearly is a degree of overlap between them. However, we are satisfied that the focus of factor e is the child's prospects for a stable family environment.[9]

In this instance, we discern no significant difference between the stability of the settings proposed by the two parties. Ms. Ireland likely will continue to spend time both at the University of Michigan and at her mother's home in Mount Clemens (two settings that are now familiar to the child). It is also possible that she will change residences at the university, and that she will move again after completing her education. Such changes, normal for a young adult at this stage of life, do not disqualify Ms. Ireland for custody.

Neither are such changes to be ignored, however. While a child can benefit from reasonable mobility and a degree of parental flexibility regarding residence, the Legislature has determined that "permanence, as a family unit, of the existing or proposed custodial home or homes" is a value to be given weight in the custodial determination.

---

[8] Factor d calls for a factual inquiry (how long has the child been in a stable, satisfactory environment?) and then states a value ("the desirability of maintaining continuity"). Taken literally, factor e appears to direct an inquiry into the extent to which a "home" will serve as a permanent "family unit."

[9] The stability of a child's home can be undermined in various ways. This might include frequent moves to unfamiliar settings, a succession of persons residing in the home, live-in romantic companions for the custodial parent, or other potential disruptions. Of course, every situation needs to be examined individually.

In some respects, Mr. Smith's proposed custodial home appears more stable. However, that stability may be chimerical. He will not live with his parents forever, and until the likely path of his life becomes more apparent, it is difficult to determine accurately how stable a custodial home he can offer. It would be ironic indeed if the uncertainty of Mr. Smith's plans regarding education, employment, and the early years of adulthood worked to his benefit as a court considered factor e.

In all events, however, the best interests of Maranda, not of Ms. Ireland or Mr. Smith, are central. As in every case, the circuit judge is to give careful consideration to the whole situation. When the court turns to factor e, it must weigh all the facts that bear on whether Ms. Ireland or Mr. Smith can best provide Maranda the benefits of a custodial home that is marked by permanence, as a family unit.

B

Second, we need to confirm that actual and proposed child-care arrangements—whether in the custodial home or elsewhere—are a proper consideration in a custody case. Many children spent a significant amount of time in such settings, and no reasonable person would doubt the importance of child-care decisions. While not directly within the scope of factor e, a parent's intentions in this regard are related to several of the statutory factors:

> (b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

\*     \*     \*

(h) The home, school, and community record of the child.

To the extent that these factors fail to capture this aspect of child-rearing, it certainly falls within the final factor:

(l) Any other factor considered by the court to be relevant to a particular child custody dispute.

Having said that child-care arrangements are a proper consideration, we then encounter the issue that brought sixty-one amici curiae to the Court of Appeals (all in support of Ms. Ireland): *How* are such arrangements to be considered? Does a parent seeking custody lose ground by proposing to place a child in a day-care center while the parent works or goes to school? Is in-home care from parents and other relatives better than day care with other children under the supervision of licensed caregivers? Is day care better?

Such questions are not susceptible of a broad answer. Certainly, placement of a child in a good day-care setting can have many benefits and is in no sense a sign of parental neglect. Both single and married parents have many obligations, and day care generally is an entirely appropriate manner of balancing those obligations.

At the same time, it requires no stretch of imagination to produce hypothetical situations in which a parent's unwise choices in this regard would reflect poorly on the parent's judgment. More fundamentally, every child, every adult, and every custody case is unique. There can be no broad rules that dictate a preference for one manner of child care over another. The circuit court must look at each situation and determine what is in the best interests of the child.

C

Third, we offer a clarification with regard to the scope of the inquiry on remand. In *Fletcher*, we explained:

> [U]pon a finding of error an appellate court should remand the case for reevaluation, unless the error was harmless. We further hold that on remand, the court should consider up-to-date information, including the children's current and reasonable preferences,[10] as well as the fact that the children have been living with the plaintiff during the appeal and any other changes in circumstances arising since the trial court's original custody order. [447 Mich 889.]

In this case, the Court of Appeals opinion is not clear with regard to whether all twelve statutory factors—not just factor e—are to be considered on remand.

As the Court of Appeals likely intended, the circuit court is to review the entire question of custody on remand.[11] The court should consider all the statutory

---

[10] A court considers the reasonable preference of the child, *if the court considers the child to be of sufficient age* to express preference. MCL 722.23(i); MSA 25.312(3)(i).

[11] As the Court of Appeals observed, the record can be closed with regard to events that happened before the mid-1994 evidentiary hearing. The circuit court should reconsider the facts adduced at that hearing in

factors and conduct whatever hearings or other proceedings are necessary to allow it to make an accurate decision concerning a custody arrangement that is in the best interests of Maranda.[12] *Fletcher*, 447 Mich 888-890.

IV

With the clarifications and modifications noted in this opinion,[13] we affirm the judgment of the Court of Appeals, remanding this case to the circuit court for further proceedings. MCR 7.302(F)(1).

BRICKLEY, C.J., and CAVANAGH, BOYLE, RILEY, MALLETT, and WEAVER, JJ., concurred.

LEVIN, J. I concur in the result.

---

light of the clarified analysis of factor e, but additional proofs regarding events before June 1994 would not be appropriate.

[12] As noted earlier, the Court of Appeals upheld the circuit court's determination that the other statutory factors (a-d and f-l) favored neither party. We will not attempt to sort through the many conflicting charges, confident that the circuit court on remand will be far better positioned to consider the present circumstances of Maranda and of the parties, and to determine where the truth lies in this matter.

[13] As indicated, the Court of Appeals disqualified the circuit judge who initially heard this matter. In light of all the circumstances, this case should go forward with the judge to whom it has now been assigned. However, we have located in this record no basis for the disqualification of the first judge.