# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM WEHBE,

        Plaintiff-Appellee,

v

EVA WEHBE,

        Defendant-Appellant.

UNPUBLISHED
July 30, 2015

No. 325847
Oakland Circuit Court
Family Division
LC No. 2011-786434-DM

Before: WILDER, P.J., and SHAPIRO and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant-mother appeals as of right the trial court order awarding plaintiff-father sole legal and physical custody of the parties' two children, AW and GW. On appeal, mother argues that (1) the trial court impermissibly changed custody as punishment for contempt, (2) the trial court's findings under the best-interest factors of MCL 722.23 were against the great weight of the evidence, and (3) the trial court erred by depriving mother of joint legal custody when there were less restrictive means to address the parental conflict, such as appointing a guardian ad litem (GAL). We affirm.

Mother first argues that the trial court "placed undue emphasis on [mother's] contempt of court in analyzing the 12 best interest factors instead of focusing on what is best for the minor children)."[1] This, mother argues, is clear legal error because it is improper for the trial court to

---

[1] When reviewing a custody order, this Court applies three standards of review. See MCL 722.28; *Brausch v Brausch*, 283 Mich App 339, 347; 770 NW2d 77 (2009). First, this Court must determine if the trial court made a clear legal error on a major issue. A clear legal error occurs when the trial court "errs in its choice, interpretation, or application of the existing law." *Shade v Wright*, 291 Mich App 17, 21; 805 NW2d 1 (2010). Second, this Court will not disturb the trial court's findings of fact unless they are against the great weight of the evidence. *Brausch*, 283 Mich App at 347. Finally, this Court reviews the trial court's discretionary rulings for an abuse of discretion. *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). In custody cases, an abuse of discretion occurs when "the trial court's decision is so palpably and

-1-

change child custody as a means of punishing a parent for contempt. While mother accurately identifies the law, she ignores that the trial court did not use the change in custody as a punishment for contempt. Further, mother has failed to identify any caselaw disallowing a trial court from considering a party's disregard for court orders as a *factor* underlying its custody decision, particularly where, as here, the court order was made in the best interests of the children.

In order to change a custody order, the moving party must establish proper cause or a change in circumstances since the entry of the last custody order "sufficient to warrant reconsideration of the custody decision." *Gerstenschlager v Gerstenschlager*, 292 Mich App 654, 657; 808 NW2d 811 (2011); see also MCL 722.27(1)(c). As mother notes, it is improper to change child custody as a means of punishing a parent for contempt. *Parrott v Williams*, 53 Mich App 635, 639-640; 220 NW2d 176 (1974), citing *Kaiser v Kaiser*, 352 Mich 601; 90 NW2d 861 (1958). Further, a parent's violation of a court order alone cannot establish proper cause or change in circumstances to justify a reconsideration of the custody decision. *Adams v Adams*, 100 Mich App 1, 13-14; 298 NW2d 871 (1980).

The 12 best-interest facts applicable to child custody cases are enumerated in MCL 722.23(a)-(*l*). In this case, the trial court considered mother's violation of its order barring contact between the children and mother's alleged boyfriend, Diar Ilia, under factors (b) and (*l*). Regarding its ruling under MCL 722.23(b), "[t]he capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any," the trial court opined,

> More importantly, [mother] has a substantiated CPS case for aggressively disciplining the child and, more importantly, her friend, boyfriend, I don't care who he is, he's someone who the [trial c]ourt has said should not have contact with her children. We can argue all day long about whether that's right or wrong but she has a complete inability to follow court orders and she is completely full of it.

> So, [Ilia] is constantly around these kids. I don't think he's an axe murderer but the children have constantly reported that he has disciplined them, hit them with a sword, as did mom. How about hitting the ear? The child says to dad, "He hit me in the ear. He uses the 'F' word," he does all these different things. So mom puts her relationship with this man before the kids and has demonstrated that she loses it. I get that they're two boys, they fight, I get they get bruises, all of that. But the – the day that my boyfriend or friend raises a hand to my child is the last day I see that person, and perhaps the last day that person lives, in my book.

> But she's – keeps coming back for more and lying to [father] and lying to the [c]ourt about it.

grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Id*.

Regarding MCL 722.23(*l*), "[a]ny other factor considered by the court to be relevant to a particular child custody dispute," the court stated, "The [c]ourt considers heavily that mother has an inability to follow the court orders, whether she agrees with them or not, and in the face of strenuous evidence to the contrary, is willing to lie and try to get Mr. Ilia to lie for her."

Mother has failed to establish that the trial court clearly erred by considering her violations of the no-contact order as *part* of its analysis under the statutory best-interest factors. Mother relies on *Adams*, *Parrott*, *Kaiser*, and *Bylinski v Bylinski*, 25 Mich App 227; 181 NW2d 283 (1970), but each of these cases are inapplicable here. *Adams* and *Kaiser* both turned on the fact that the respective trial courts used a parent's violation of a court order as proper cause to reconsider the custody determination, which this Court and the Supreme Court found to be legal error. *Kaiser*, 352 Mich at 603-604; *Adams*, 100 Mich App at 13-14. Mother has not argued that the trial court found proper cause or change in circumstances to review custody on the basis of her contempt. Moreover, the trial court plainly stated that it found proper cause because Child Protective Services (CPS) substantiated a claim against mother and the parties clearly could not coparent, as evidenced by their persistent returns to court. After reviewing the record, we conclude that these rulings were not in error.

*Parrott* and *Bylinski* also do not support mother's position. In *Parrott*, this Court reversed because it found that the trial court modified custody on the basis of a single factor, the mother's violation of a court order granting the father parenting time, instead of considering all of the statutory factors as required by the Child Custody Act. *Parrott*, 53 Mich App at 639. In *Bylinski*, this Court reversed because the trial court modified child custody in a contempt order as punishment and never held a hearing on the best interests of the children. *Bylinski*, 25 Mich App at 229. By contrast, in this case, the trial court made detailed findings under each of the statutory best-interest factors. After seven days of argument and testimony, the court found by clear and convincing evidence that it was in the best interests of the children for father to exercise sole legal and physical custody, with parenting time for mother every other weekend and Wednesday overnights. Because the trial court did not give improper weight to mother's contempt in rendering its custody decision, mother's argument fails.

Mother next contends that the trial court's findings regarding the best interests of the children were against the great weight of the evidence. Specifically, mother challenges the trial court's findings concerning best-interest factors MCL 722.23(a), (b), (c), (d), (e), (h), (j), (k), and (*l*). The trial court found that factors (b), (c), (d), (e), and (*l*) weighed in favor of father, assigned equal weight to both parties regarding factors (a), (f), (g), (j), and (k), and did not consider factors (h) and (i). Our review of the record reveals that these findings were not against the great weight of the evidence.

When making a custody determination, a trial court generally must consider and make conclusions with respect to each best-interest factor. *Rittershaus v Rittershaus*, 273 Mich App 462, 471; 730 NW2d 262 (2007). The best-interest factors, enumerated in MCL 722.23, are:

> (a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute.

"[T]rial courts are in a superior position to make accurate decisions concerning the custody arrangement that will be in a child's best interests." *Fletcher v Fletcher*, 447 Mich 871, 889-890; 526 NW2d 889 (1994). "This Court will defer to the trial court's credibility determinations, and the trial court has discretion to accord differing weight to the best-interest factors." *Rains v Rains*, 301 Mich App 313, 329; 836 NW2 709 (2013) (quotation marks and citation omitted).

Factor (a) addresses the "love, affection, and other emotional ties existing between the parties involved and the child." MCL 722.23(a). The trial court found that both parties have love and affection for both children, so it credited the parties equally. Mother argues that, because father had a hectic work schedule, whereas mother "did everything with the children," the children were much more strongly bonded with mother. Mother argues that the trial court only relied on the testimony of one teacher that the children were bonded with both parties. However, mother fails to take into consideration all of the relevant testimony. Both of the children's teachers testified that the children had a good relationship with both parents and that

-4-

both parents were attentive and involved with their children, which the trial court reiterated in its opinion. The record reflects that AW told Kelly Hood, the CPS worker investigating the claims made against mother, that he likes both parents. The trial court also noted that father testified to many activities that he engages in with the children, such as trips to the zoo, church, and the park. Similarly, mother testified that she takes the children on vacations, swims with them, and teaches them how to ride bikes. The court stated that it would not fault father for working 40 hours per week in order to provide for the family. Accordingly, the trial court's decision to weigh factor (a) equally was not against the great weight of the evidence.

Factor (b) concerns the "capacity and disposition" of the parents to provide the child with "love, affection, and guidance" and to continue the child's education and religious upbringing. MCL 722.23(b). The trial court favored father on this factor, finding that mother involved the children in a fight with father by calling him names, relying on a recording provided by father wherein mother told one of the children that the child must protect her from his father; mother has a substantiated CPS case for aggressive discipline; and "mo[st] importantly," mother has allowed the children to continue to have contact with Ilia despite the court's order expressly forbidding any contact. The court noted that mother does appear to be more involved in religious training, but found that mother continued to allow the children to be in the presence of Ilia after they reported that he had disciplined them physically. Mother argues that the trial court "never truly analyzed" factor (b) because it "impermissibly considered" mother's contempt. She further argues that the CPS substantiation was not a legitimate concern of the trial court, arguing that if it had been, "the trial court would have certainly ordered supervised parenting time" for mother. Mother reiterates that she was much more involved with schooling and conferences and therefore she should have been credited with factor (b).

As discussed above, it was not clear error for the trial court to consider mother's failure to comply with its court order that the children have no contact with Ilia. The trial court heard overwhelming evidence from the children's preschool teacher, Kim Grzywack, Hood, and father that there was a concern that the children were being physically disciplined. AW told Hood that Ilia hits him and that he does not like Ilia. A private investigator hired by father presented video evidence that mother violated the no-contact order, showing the children with mother while she stayed overnight at Ilia's home. Mother and Ilia both attempted to refute this evidence, but the trial court did not credit their testimony, stating:

> I think you are completely full of it and for you to come here and see a video of yourself this past August and try and convince me that Mr. Stillman [sic], who I – granted, is not neutral, works for [father], but took that video a whole year earlier despite the fact that you didn't own the house that he followed you from then, and despite the fact that there wasn't an order requiring you not to have . . . contact with Mr. Ilia back then, and therefore, it would not have been of interest if you were spending time with him because you weren't ordered not to spend time with him, but to get – ask me to believe that Mr. Stillman [sic] was willing to come in here and lie and have taken a video a year earlier when this wasn't even an issue of you, that, in conjunction with the fact that your children indicate that [Ilia] hits them, that the two of you argue, that they stay at his house all the time, leads me to believe that you are completely incredible . . . .

> So, to be honest with you, I don't believe a word you say because I think you are full of it up to your eyeballs.

Deferring to the trial court's credibility determination, which is supported by the record, we conclude that the trial court's finding that factor (b) favored father was not against the great weight of the evidence.[2]

Regarding factor (c), the capacity of the parties "to provide the child[ren] with food, clothing, medical care or other remedial care" and material needs, MCL 722.23(c), the trial court found that father had a full time job and a home, while mother "barters with Mr. Ilia for babysitting to have her bills paid," and likely would be unable to afford her lifestyle if she and Ilia broke up. Mother argues that factor (c) should have been credited equally to the parties because mother is able to provide for all the needs of the children, despite having only a part-time job. She also argues that factor (c) involves more than a financial analysis of earning power, but also concerns the disposition of the parties to provide for the children, which, mother argues, the trial court ignored since it failed to account for the fact that mother always provided the children with clothing, food, and tended to their medical care issues.

> Factor c does not contemplate which party earns more money; it is intended to evaluate the parties' capacity and disposition to provide for the children's material and medical needs. Thus, this factor looks to the future, not to which party earned more money at the time of trial, or which party historically has been the family's main source of income. [*Berger*, 277 Mich App at 712.]

Despite the trial court's comments to that effect, it did not entirely base its decision on the fact that father earns more money and possesses a greater earning potential. The court expressed concern that mother relied too much on Ilia, a reliance that did not guarantee a stable income. While mother correctly asserts that the evidence supported that she was the primary parent to provide the children with medical care, e.g., taking them to their doctor and dentist appointments, the evidence also provided that father took the children to the doctor when necessary. Father also testified that he had not been the parent to take the children for their medical care during the marriage because he worked full time during the day, which the court refused to fault him for, opining that

> when one parent works and the other parent stays at home the – the deal is the parent who stays at home watches the kids, picks up the dry cleaning, goes to the

---

[2] As a reviewing court, we rely on the trial court to make credibility assessments and we are substantially assisted when the trial court refers to such assessments on the record. However, such references should always be consistent with a court's duty to treat the parties in a patient, dignified, and courteous manner. Assessments of credibility stated informally in phrases such as "completely full of it" and "full of it up to your eyeballs" lack dignity and courtesy and are of less assistance to this Court, as the tone suggests that the trial court may be motivated by pique rather than an objective credibility determination. We urge the trial court to use more judicious language in the future.

well-baby care visits . . . . That's – that's why we do that. I'm . . . hesitant to ever fault the parent who puts the bread on the table for [that.]

The evidence supported that father had the capacity to provide for the children's medical care equally as mother, in addition to a greater capacity to provide for them financially. Accordingly, the trial court's finding that factor (c) favored father was not against the great weight of the evidence.

Mother next challenges the court's findings as to factors (d) and (e). These factors overlap somewhat. *Ireland v Smith*, 451 Mich 457, 465; 547 NW2d 686 (1996). Factor (d) concerns "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity," while factor (e) addresses "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes." MCL 722.23(d) and (e). Factor (e) requires a court to "weigh all the facts" bearing on which parent likely can best provide the child "the benefits of a custodial home that is marked by permanence, as a family unit." *Id*. at 466.

The trial court favored father on both factors, finding as follows with regard to factor (d):

The children have lived alternatively in both homes. Father's home just changed. He has a house now. He had an apartment without bikes, apparently, before now.

On the one hand, it appears that mother has insufficient income to maintain a home on her own, yet she lives in a house that she says she bought on a land contract, she has a very nice car. I don't know, but I don't know how stable the home is because sometimes they're staying at her home on Cecilia and sometimes they're staying with Mr. Ilia and his two children, so to me, that's not particularly stable. It's bad enough that the kids are going back and forth with mom and dad, that's a function of divorce, but when they're with mom I am not clear on any given night where they sleep. So factor [(d)], the [c]ourt finds, by clear and convincing evidence is credited to dad.

Regarding factor (e), the trial court opined:

Mom has not focused on finding stable employment so she can provide for the children independent of third parties paying her bills, but for third parties helping mom I don't know where she'd get money from because she's not employed full-time.

Her reported income is far less than her basic monthly living expenses and so her ability to provide a stable environment for the children is tenuous. It appears to be – rely on either her boyfriend or her parents. Father has always had a stable and satisfactory place to live so factor [(e)] is credited to dad.

Mother argues that the children had been living with her since the divorce and that the CPS accusations against her were nothing more than "bogus claims" made by father as revenge for what he thought was adultery during the marriage. Mother also contends that the trial court "focused solely on financial considerations instead of properly evaluating the permanence of the

family unit, as it should have done, consistent with the best interests of the minor children." She argues that father's proposed custodial environment for the children consists of the children spending the majority of their time with their paternal grandmother and a babysitter, and that such an arrangement is not in their best interests.

The focus of factors (d) and (e) is the stability of each environment and the likelihood that the competing environments would remain continuous. See *id*. (discussing that although the mother lived with the child in two environments, the uncertainty of the father's home could be considered against him under these factors). Although the trial court could have considered the fact that father would need to hire a babysitter and have the children's grandmother care for them on occasion due to his work schedule, "[t]here can be no broad rules that dictate a preference for one manner of child care over another. The circuit court must look at each situation and determine what is in the best interests of the child." *Id*. at 468. The record reflects that the trial court made reasonable findings, which were that, without Ilia, mother's home would be unknown, whereas father was self-sufficient and had an appropriate plan in place for childcare when needed. The record supports that the children had a good relationship with their paternal grandmother. The entirety of mother's argument rests on her own testimony, which the trial court apparently found less credible than that of father. Given our deference to the trial court's credibility determinations, we conclude that the trial court's findings regarding factors (d) and (e) were not against the great weight of the evidence.

Factor (h) concerns the "home, school, and community record" of the children. MCL 722.23(h). The trial court declined to make a finding under this factor, finding it irrelevant because the children were too young to show a decline in the relevant records. Mother argues that the trial court abused its discretion in not considering this factor because it clearly favored her, and further, that the law requires remand where the trial court fails to consider any factor. Generally, a court's failure to consider a statutory best-interest factor necessitates remand. *Fletcher*, 477 Mich at 880-881. However, so long as a trial court makes factual findings "without over elaboration of detail or particularization of facts," the findings remain sufficient. MCR 2.517(A)(2). Trial courts frequently and properly exercise their discretion to decide whether children are too young for various factors to carry weight, generally in the context of factor (i),[3] and we properly defer to a trial court's findings so long as some findings were made. See *Treutle v Treutle*, 197 Mich App 690, 694-696; 495 NW2d 836 (1992) (declining to reverse where a trial court found that the child was too young to express a reasonable preference under factor (i), and therefore, assigned no weight to this factor).

---

[3] Notably, the trial court also found the children too young to express a reasonable preference under factor (i). Mother has not challenged this decision, and likely would be unable to contest it because neither party requested that the trial court interview the children. See *Sinicropi v Mazurek*, 273 Mich App 149, 182-183; 729 NW2d 256 (2006) (holding that where the parties failed to request that the trial court interview the child, there are no grounds for reversal because the child's preference alone would not otherwise sway the trial court's custody decision).

In this case, the trial court made a sufficient finding. It found that the children were too young for their home, school, or community records to support a finding in favor of either party. While there was significant testimony regarding the schooling of the children, and perhaps the trial court could have taken this minimal history into account, its decision to find the factor irrelevant because of the children's young ages (both under six) was not against the great weight of the evidence. Although the record reflects that mother chose schools for the children and was the more involved parent in school functions and teacher conferences, there was also testimony from both children's teachers that both parents were attentive and involved. Also, the trial court refused to discredit father for not being as involved in the children's schooling because he worked full time. There was evidence that the oldest child having problems in kindergarten, receiving a failing grade for "listens and follows directions" and a "needs improvement" in social skills. Father testified that AW is receiving counseling for his social skills, but that mother failed to take him to these sessions. Nonetheless, "because the trial court need not make its custody determination on the basis of a mathematical calculation and may assign differing weights to the various best-interest factors," mother cannot establish any error of the trial court by assigning no weight to this factor. *Berger*, 277 Mich App at 712 (internal citation omitted). We find no error in the trial court's equal crediting of factor (h).

Next, mother asserts that the trial court improperly evaluated factor (j), which addresses "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship" with the other parent. MCL 722.23(j). The trial court credited neither party with this factor, opining,

> You (mother) are telling your children[,] daddy's trying to send me to jail, he's a criminal, [father's] going off and yelling at you, whatever it is, but the two of you do not have a willingness and ability to facilitate a close and continuing parent/child relationship between the two of you and you cannot co-parent [sic].

> \* \* \*

> You cannot agree on medical decisions, you can't call each of you to the hospital at the same time, you don't tell him what happened, you cross out things on a prescription bottle. Factor [(j)] is credited to neither one of you.

Mother argues that the trial court gleaned the wrong impression of the parties and that they were capable of cooperating with regard to major decisions, as evidenced by mother's cooperation in registering the children for the morning school session to accommodate father. Mother asserts that the trial court's perception that the parties could not coparent "was the product of observing the acrimony between them during the evidentiary hearing (mainly because [mother] was unrepresented and was questioning her former spouse directly)." Therefore, mother argues, she should have been credited with this factor.

Mother's position is unsupported by the record. While it is true that mother agreed to change GW's school hours to accommodate father, this is the only testimony that supports the ability of the parties to coparent in the slightest. There was voluminous testimony from nearly every witness that father and mother simply could not get along. The psychologist referred by CPS testified that it was possible that father had been coaching AW. Both GW's and AW's

teachers reported to Hood that they were "concerned about the way the parents get along and that it's affecting the children." Father admitted to engaging in heated arguments with mother during parenting time exchanges, indicating that mother once spit at him in front of the children. After reviewing the record, we find no error in the trial court's finding that this factor favored neither party.

Mother also challenges the trial court's findings under factor (k), "domestic violence." MCL 722.23(k). The court found the parties equal on this factor, noting that father has a conviction for domestic violence against mother, but that mother also has a substantiated CPS complaint. Mother argues that this factor should have favored her because the trial court did not believe that she was a threat to the children and it failed to mention that the evidence revealed that father pulled the children's hair as a form of corporal punishment. Mother further argues that the trial court failed to consider the context of the CPS involvement, noting that the trial court gave no consideration to the multiple accusations of abuse filed against mother by father, which should have been "viewed with a great deal of suspicion."

Mother's argument is without merit. Essentially, mother asks this Court to discount a substantiated CPS finding because father repeatedly reported her to CPS. While the record supports that father did frequently report mother to CPS, it also supports a finding that the children were frequently harmed in mother's care in some fashion, with several injuries, cuts, and bruises being documented by father, Hood, and Grzywack, in addition to the CPS substantiation that mother used a toy sword to discipline AW. Therefore, the trial court's finding as to factor (k) was not against the great weight of the evidence.

Finally, the last best interest factor, (l), concerns "any other factor considered by the court to be relevant to a particular child custody dispute." MCL 722.23(l). In addressing this factor, the trial court considered mother's failure to follow its order that the children not be in contact with Ilia or spend the night at his home. Mother argues that the trial court committed error in relying on mother's contempt when determining the best interests of the children. As discussed above, the trial court did not err in considering mother's contempt as *part* of its best-interest analysis. The no-contact order was created to protect the children because of allegations that Ilia was physically disciplining them. Hood testified that AW told her that he "doesn't feel safe around [Ilia]" because Ilia " '[h]urts with a sword, too.' " The trial court found, with record support, that mother was violating the no-contact order. Mother's violation of the no-contact order was relevant under factor (l), and the trial court's finding that it should be weighed in favor of father as a result was not against the great weight of the evidence.

Finally, mother argues that "[t]he trial court attempted to abdicate its future responsibilities to assist the joint custodians in the case at bar by awarding [father] sole legal and physical custody[,]" which mother argues was clear legal error because "although the parties were seemingly unable to cooperate, all decisions for the minor children were being made and there was never a problem with the parties being able to make general decisions." Further, mother argues that if the trial court had wanted to limit future motions from father, it could have considered a appointing a GAL.

Although not contained in the Child Custody Act, it is understood in practice that joint legal custody refers to a custodial situation where the parties share decision-making authority

with respect to the "important decisions affecting the welfare of the child." MCL 722.26a(7)(b); see also *Lombardo v Lombardo*, 202 Mich App 151, 157; 507 NW2d 788 (1993). "Medical and educational decisions are clearly important decisions affecting the welfare of the children." *Shulick v Richards*, 273 Mich App 320, 327; 729 NW2d 533 (2006) (quotations omitted). "[A] trial court properly denies joint custody . . . where the parties cannot agree on basic child-rearing issues." *Lombardo*, 202 Mich App at 157.

In support of her claims, mother cites *Fisher v Fisher*, 118 Mich App 227, 232; 324 NW2d 582 (1982); *Nielsen v Nielsen*, 163 Mich App 430; 415 NW2d 6 (1987); and *Lombardo*, 202 Mich App at 151. However, none of these cases support mother's suggestion that the trial court was required to consider appointing a GAL to mediate for the parties. Instead, these cases simply reflect that joint custody is appropriate so long as the parties can agree on basic child rearing issues, and it is the duty of the trial court to address the best interests of the children when the parties cannot agree on these issues. See, e.g., *Nielsen*, 163 Mich App at 434.

More important, a simple review of the record supports that the trial court was duty bound to assign sole legal custody to one parent, as the facts overwhelmingly supported that the parties could not share legal custody. *Lombardo*, 202 Mich App at 157. The parties would not communicate regarding the medical care of the children, with both parties accusing each other of hiding the children's doctor or hospital visits from the other. There had been some disagreement regarding the schooling of GW, with father placing him in a daycare facility without informing mother. Finally, there was overwhelming evidence that the parties' distaste for one another was infecting their relationships with the children, with coaching, parental alienation, and harassment allegations flying between them throughout the proceedings. Mother has made no arguments in support of any legal error of the trial court in granting sole legal custody to father, where the record plainly reflects the parties' inability to coparent.

Affirmed.

/s/ Kurtis T. Wilder
/s/ Douglas B. Shapiro
/s/ Amy Ronayne Krause