*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KELLY M. KENNEALLY,

Plaintiff-Appellee,

v

ELIZABETH A. GOULET, formerly known as
ELIZABETH A. KENNEALLY,

Defendant-Appellant.

UNPUBLISHED
June 4, 2019

No. 343744
Delta Circuit Court
Family Division
LC No. 14-022472-DM

Before: BOONSTRA, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals by right the trial court's order modifying the parties' judgment of divorce regarding custody, parenting time, and child support. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The parties have one minor child together, IJK. The parties were married in 2010 and divorced in 2014. In the judgment of divorce, the trial court awarded the parties joint legal and physical custody of IJK. In November 2017, plaintiff filed a motion to modify custody, arguing that he should be granted primary physical custody because defendant had left her job and moved from Escanaba to Marquette to live with her boyfriend. Since defendant's move, the parties had developed a routine in which IJK lived with plaintiff during the week in Escanaba and attended school there, and spent weekends with defendant from Friday evening through Sunday evening. Plaintiff's motion requested that IJK continue to reside with him during the week and that he receive two additional weekends with her. Defendant responded to the motion, asserting that she had discussed her move with plaintiff. She maintained that the parties informally agreed that plaintiff would pick up the child on Monday mornings to take her to school. Defendant contended that plaintiff had repeatedly violated this agreement by picking IJK up on Sunday nights instead. Defendant asked the trial court to enforce the parties' informal arrangement. Defendant also filed her own motion to modify custody, requesting that the trial court award her primary physical custody of IJK after the end of the school year. Plaintiff disputed that he had agreed to pick up IJK on Monday mornings, because he worked as a Delta

-1-

County Sheriff's deputy from Sunday evening until 7:00 a.m. on Monday morning. Plaintiff also believed that IJK was tired on Mondays because of the arrangement. Plaintiff asked the trial court to deny defendant's motion to change custody or to award him primary physical custody.

The referee found that defendant's move was a proper cause or change in circumstance that warranted review of the custody order, noting that both parties agreed that the existing joint physical custody arrangement was not working. After hearing testimony from plaintiff, defendant, plaintiff's wife, Jaylene Kaufman, and the IJK's third-grade teacher, Sara Trombley, and after meeting with the child *in camera*, the referee found that an established custodial environment existed with both parents. The referee then reviewed the child custody best-interest factors found in MCL 722.23:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute. [MCL 722.23.]

The referee found factors (a), (b), (c), (f), (g), (j), and (k) to be neutral. The referee found that factors (c), (d), (e), (h), and (*l*) favored plaintiff. The referee also stated that IJK's preference (factor(i)) was taken into account, without stating on the record what that preference was. The referee recommended that plaintiff be given sole physical custody, and that both parties retain joint legal custody. The referee recommended parenting time for defendant every other weekend from Friday at 5:00 p.m. to Sunday at 5:00 p.m.

Defendant filed an objection to the referee's recommendation, challenging the referee's conclusion that it was in IJK's best interests for plaintiff to have sole physical custody and specifically objecting to the referee's findings that factors (d), (e), (h), and (*l*) favored plaintiff.

At a de novo review hearing, the trial court heard testimony from defendant's boyfriend, Shandon Dupras. At the close of the de novo hearing, the trial court stated that he would consider all of the evidence, including witness testimony and exhibits from the referee hearing, as well as Dupras's testimony taken at the review hearing. The trial court later issued an opinion and order granting sole physical custody to plaintiff as recommended by the referee. The trial court agreed with the referee's findings that factors (a), (b), (f), (g), (j), and (k) were neutral. The trial court also stated its agreement with the referee's finding regarding the preferences of the children under subsection (i); the trial court characterized this as a finding that the factor was neutral, although, as stated, the referee did not actually weigh this factor on the record. The trial court found that factors (c), (d), (e), (h), and (*l*) favored plaintiff. The trial court found by clear and convincing evidence that the totality of the best-interest factors favored plaintiff and awarded him sole physical custody with parenting time for defendant.

This appeal followed.

## II. STANDARD OF REVIEW

Three standards of review apply to fact findings, legal questions, and discretionary decisions in child custody cases. *Foskett v Foskett*, 247 Mich App 1, 4; 634 NW2d 363 (2001).

> The clear legal error standard applies where the trial court errs in its choice, interpretation, or application of the existing law. Findings of fact are reviewed pursuant to the great weight of the evidence standard. In accord with that standard, this court will sustain the trial court's factual findings unless the evidence clearly preponderates in the opposite direction. Discretionary rulings are reviewed for an abuse of discretion, including a trial court's determination on the issue of custody. [*Id*. at 4-5 (quotation marks and citation omitted).]

An abuse of discretion occurs when the trial court's decision "falls outside the range of reasonable and principled outcomes." *Diez v Davey*, 307 Mich App 366, 389; 861 NW2d 323 (2014) (quotation marks and citation omitted). This Court "defer[s] to a trial court's unique opportunity to judge the credibility of the witnesses before it . . . ." *Dumm v Brodbeck*, 276 Mich App 460, 465; 740 NW2d 751 (2007). This Court reviews unpreserved issues for plain error

affecting substantial rights. *Rivette v Rose-Molina*, 278 Mich App 327, 328; 750 NW2d 603 (2008).

## III. ANALYSIS

Defendant argues that the trial court abused its discretion by allowing only one witness to testify at the de novo hearing, and that the trial court erred by awarding sole physical custody of IJK to plaintiff. We disagree.

## A. DE NOVO HEARING

Regarding the limitation of witness testimony at the de novo hearing, defendant did not object to the conduct of the hearing in the trial court; we consequently review this unpreserved issue for plain error. See *Rivette*, 278 Mich App at 328.

A party may request judicial review of a referee's findings and recommendation by filing a written objection within 21 days, and "[t]he objection must include a clear and concise statement of the specific findings or application of law to which an objection is made. Objections regarding the accuracy or completeness of the recommendation must state with specificity the inaccuracy or omission." MCR 3.215(E)(4). After a party objects to a referee's findings and recommendation, the trial court reviews the referee's recommended order as follows:

> To the extent allowed by law, the court may conduct the judicial hearing by review of the record of the referee hearing, but the court must allow the parties to present live evidence at the judicial hearing. The court, may in its discretion:
>
> (a) prohibit a party from presenting evidence on findings of fact to which no objection was filed;
>
> (b) determine that the referee's finding was conclusive as to a fact to which no objection was filed;
>
> (c) prohibit a party from introducing new evidence or calling new witnesses unless there is an adequate showing that the evidence was not available at the referee hearing;
>
> (d) impose any other reasonable restrictions and conditions to conserve the resources of the parties and the court. [MCR 3.215(F)(2).]

MCL 552.507 also governs de novo review of a referee's recommendation, and provides in relevant part:

> (5) A hearing is de novo despite the court's imposition of reasonable restrictions and conditions to conserve the resources of the parties and the court if the following conditions are met:

(a) The parties have been given a full opportunity to present and preserve important evidence at the referee hearing.

(b) For findings of fact to which the parties have objected, the parties are afforded a new opportunity to offer the same evidence to the court as was presented to the referee and to supplement that evidence with evidence that could not have been presented to the referee. [MCL 552.507(5).]

In this case, defendant argues that the referee limited the witness testimony it would permit by limiting the referee hearing to two total hours in length and granting each party 48 minutes to present testimony. In her objection to the referee's recommendation, defendant did not state what additional witness testimony she should have been permitted to introduce at the de novo hearing. On appeal, defendant states that the trial court limited each party to the presentation of one witness, and that she "wished she also had the ability to call her mother and her significant other to testify." But defendant never asked the Court to permit her mother to testify at the hearing, and Dupras did testify. Further, all the witnesses defendant named on her witness list ultimately testified, either at the referee hearing or the de novo hearing. Defendant did not list her mother on her witness list or seek to amend the list at any point to add her mother as a witness. We conclude the trial court did not plainly err by limiting the testimony at the de novo hearing, as permitted by MCR 3.215(F)(2) and MCL 552.507(5), when it was never even asked to do otherwise. *Rivette*, 278 Mich App at 328; see also *Dumm*, 276 Mich App at 465-466 (affirming the trial court's order issued "in reliance on the . . . recommendation" of the referee where defendant "neither asked to present live evidence before the trial court nor presented any documentation or affidavits to support his allegations").

## B. BEST-INTEREST FACTORS

Defendant also argues that the trial court erred by weighing factors (c), (d), (e), (h), and (*l*) in favor of plaintiff. We disagree. A party seeking modification of custody must demonstrate proper cause or changed circumstances. MCL 722.27(1)(c); *Vodvarka v Grasmeyer*, 259 Mich App 499, 508; 675 NW2d 847 (2003). The trial court must first determine whether an established custodial environment exists. *LaFleche v Ybarra*, 242 Mich App 692, 695-696; 619 NW2d 738 (2000). If no established custodial environment exists, the trial court may modify the custody arrangement if it finds by a preponderance of the evidence that the change serves the child's best interests. *Griffin v Griffin*, 323 Mich App 110, 119; 916 NW2d 292 (2018). If the requested modification will change the established custodial environment, the trial court may modify custody only if clear and convincing evidence shows that the change in custody will be in the child's best interests. *Foskett*, 247 Mich App at 6.

### 1. FACTOR (c)

Factor (c) is "the capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs." MCL 722.23(c). A parent's disinclination or inability to find better paying work, in light of that parent's education and prior work experience, supports weighing factor (c) against that parent. *McCain v McCain*, 229 Mich App 123, 126-127; 580 NW2d 485 (1998).

In this case, the trial court found that this factor favored plaintiff because plaintiff, a sergeant at the Sheriff's Department, had an annual salary of $45,000 and provided health insurance for IJK, while defendant had no health insurance and had been unemployed for seven months since she moved to Marquette. The trial court also noted that defendant had not substantiated her claim that she had ample savings to support herself and IJK while she was not working. Defendant argues that factor (c) is neutral because she made a deliberate choice to stop working, she could go back to work if she needed to, and the record contains no evidence that defendant was not able to provide for IJK's needs. Defendant further argues that the fact that plaintiff provides the child with health insurance, while defendant does not, does not weigh this factor in plaintiff's favor. We disagree.

The evidence does not support defendant's claim that she could find work at any time. She testified before the referee that she had recently had a job interview that looked promising, but she was still unemployed at the time of the de novo hearing. The trial court stated its concern about the future and the lack of evidence of how long defendant's savings would suffice to support herself and IJK. Defendant testified that she used savings to cover expenses, but did not testify concerning any details about her expenses or her savings. Defendant did not present evidence showing how long she could continue to live on her savings. In contrast, plaintiff had been employed by the Sheriff's Department for nine years and made a $45,000 annual salary. The trial court cited plaintiff's provision of health insurance for IJK as only one consideration under this factor, for which it primarily compared the parties' employment and incomes. Defendant has not established that the trial court's findings regarding her employment or her savings were clearly erroneous, or that the trial court erred by weighing factor (c) in plaintiff's favor. *Foskett*, 247 Mich App at 4-5.

## 2. FACTOR (d)

Factor (d) is "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." MCL 722.23(d). When a child has lived in a certain area for all of his or her life, where the child has attended the same school, has extended family, and has generally thrived, the trial court does not err by concluding that a child's relationship with a stepsibling and half-sibling do not outweigh the other circumstances. *Kubicki v Sharpe*, 306 Mich App 525, 542-543; 858 NW2d 57 (2014).

The trial court found that factor (d) favored plaintiff because IJK lived with her father in the same home in which she grew up, attended the same school and the church in the community, and had friends in the neighborhood and relatives who regularly visited her and provided childcare. Defendant argues that factor (d) favors her because of the circumstances surrounding plaintiff's marriage and because defendant and her boyfriend, who are also in a committed relationship, have successfully blended their families. Defendant pointed out that plaintiff had married his significant other, Kaufman, but had not informed IJK of the marriage; plaintiff testified that they had been married in a courthouse ceremony for insurance reasons but had not informed IJK because they were planning a large wedding ceremony for the following year and had involved IJK in the planning process. The trial court did not find it significant under these circumstances that plaintiff had not told IJK that he had remarried. Defendant has not demonstrated how plaintiff's minor deception in allowing an eight-year-old child to believe that the planned wedding celebration would be plaintiff and Kaufman's only wedding had

harmed IJK. Additionally, defendant does not address the other factors favoring plaintiff on the matter of continuity, including the IJK's school and church attendance and her friends in plaintiff's neighborhood and at school. The trial court was also concerned about defendant's decision to uproot her life, and consequently, IJK's life, regardless of how good the relationships were in her new household, by leaving her job and moving in with her boyfriend, leaving defendant less financially and residentially stable.

Defendant also argues that this factor favors her because defendant's older children have been a part of IJK's life since she was born. Both parties agreed that IJK had a loving relationship with defendant's older children, but plaintiff and Kaufman testified that IJK had a loving relationship with their daughter as well. In sum, IJK had a good relationship with all of her half-siblings, and the trial court did not err by failing to tilt this factor toward defendant by prioritizing IJK's relationship with one set of half-siblings over the other. Nor does defendant show why IJK's relationship with defendant's older children should outweigh the stability of plaintiff's home. Defendant has not established that the trial court erred by weighing this factor in favor of plaintiff. *Foskett*, 247 Mich App at 4-5.

## 3. FACTOR (e)

Factor (e) is "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes." MCL 722.23(e). Permanence and stability, rather than acceptability of the home, are the touchstone considerations for this factor. *Ireland v Smith*, 451 Mich 457, 464-465; 547 NW2d 686 (1996).

In challenging the weighing of this factor, defendant repeats her argument made with regard to factor (d) about IJK being separated from defendant's older children. The trial court found that IJK had half-siblings in each parent's home and that a change of custody in favor of either parent would affect the amount of time IJK spent with those half-siblings. Thus, the presence of half-siblings in either parent's home did not affect the weighing of this factor. *Kubicki*, 306 Mich App at 543-544. The referee found that this factor favored plaintiff because IJK was living with plaintiff, who owned his own home, during the week, and with defendant, who lived with her boyfriend in a home owned by his mother, on the weekends. Plaintiff's circumstances were more permanent and stable than defendant's circumstances. Plaintiff owned the home in which he lived, while defendant's boyfriend's mother owned the home in which defendant lived. However committed defendant and Dupras were to each other, defendant's home situation did not have the same permanence and stability as did plaintiff's home. The trial court did not err by weighing this factor in favor of plaintiff. *Foskett*, 247 Mich App at 4-5.

## 4. FACTOR (h)

Factor (h) is "[t]he home, school, and community record of the child." MCL 722.23(h). The trial court found that this factor favored plaintiff because IJK was attending school in Escanaba, which had a unique reading program that had benefitted IJK. The trial court added that plaintiff was able to continue IJK in her extracurricular activities at school, while both parents attended school conferences. Defendant argues that this factor is neutral because defendant helped the child with her homework and was also involved with parent-teacher conferences. Defendant is correct that both parties helped IJK with her homework and attended

parent-teacher conferences. However, defendant does not address the trial court's holding that it was in IJK's best interests not to change schools. Trombley testified that IJK was doing well in school and had made "significant gains . . . in reading, comprehension, and fluency." Both parties testified that IJK was doing well at her current school placement. The trial court did not err by weighing this factor in favor of plaintiff. *Foskett*, 247 Mich App at 4-5.

### 5. FACTOR (*l*)

Factor (*l*) is "[a]ny other factor considered by the court to be relevant to a particular child custody dispute." MCL 722.23(*l*). The trial court found that factor (*l*) favored plaintiff because defendant's decision to quit her job and move to Marquette to live with her boyfriend demonstrated that defendant had put her desires and needs ahead of the IJK's. The trial court further noted Dupras's criminal record, although it acknowledged that none of his convictions were recent. The trial court added that the Upper Peninsula's frequent severe weather could complicate travelling the 65-mile distance between defendant's home and plaintiff's school for at least six months out of the year; making it unlikely that IJK could continue attending school in Escanaba if defendant had primary physical custody in Marquette. Defendant argues that she planned her move to Marquette, that her decision not to work gives her more time to be with the IJK, that the distance is not a significant issue, and that Dupras's criminal history is too old to be relevant.

Defendant's arguments do not address the trial court's findings. Significantly, defendant's focus on her choice to move to Marquette to further her relationship with Dupras does not address the effect of that move on IJK at all, supporting the trial court's concern that defendant's move demonstrated that she had put her own needs before the child's needs. And although defendant argues that Dupras's criminal history was too old to be of consequence, the trial court also noted that his criminal record was old; it does not appear that the record played a pivotal role in the trial court's decision under this factor. Defendant minimizes the potential for the impact of winter weather as "essentially irrelevant," without addressing the trial court's substantiated concerns about a 130-mile round trip in Upper Peninsula winter. Therefore, even if we agreed with defendant that Dupras's criminal record was not an issue, defendant has not established how the trial court erred by weighing this factor in favor of plaintiff. *Foskett*, 247 Mich App at 4-5.

Having concluded that no factors favor defendant, the trial court did not abuse its discretion by awarding plaintiff sole physical custody. *Id*.

Affirmed.

/s/ Mark T. Boonstra
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood

-8-