*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HOLLY CYNTHIA THOMAS,

      Plaintiff-Appellee,

v

BRADLEY EDWARD THOMAS,

      Defendant-Appellant.

UNPUBLISHED
May 12, 2026
2:01 PM

No. 374282
Van Buren Circuit Court
LC No. 2020-070131-DM

Before: MURRAY, P.J., and REDFORD and RICK, JJ.

PER CURIAM.

In this custody action, following remand from this Court,[1] the trial court awarded the parties joint legal and physical custody of the children. Defendant appeals of right the order denying his motion to change legal and physical custody. We affirm.

## I. BACKGROUND

Plaintiff and defendant share four children: JT, BT, UT, and ST. Plaintiff filed for divorce in June 2020. In February 2022, the trial court entered a stipulated order regarding custody and parenting time, in which the parties would share joint legal and physical custody. The order was to be incorporated into the judgment of divorce. By November 2022, the judgment of divorce had not yet been entered, however, and defendant moved to modify custody and parenting time. Defendant requested sole legal and physical custody. Plaintiff moved to dismiss defendant's motion, and a hearing began on the motions in February 2023. During an April 2023 hearing, however, the trial court dismissed defendant's motion to modify custody. Afterward, the trial court entered the judgment of divorce, granting the parties joint legal and physical custody.

Defendant appealed the judgment of divorce, and the trial court's orders for spousal support and child support. This Court held, in relevant part, that the trial court erred by dismissing

---

[1] *Thomas v Thomas*, unpublished per curiam opinion of the Court of Appeals, issued February 22, 2024 (Docket No. 366112).

defendant's motion for a change of custody without notice and without addressing the merits of the motion. *Thomas v Thomas*, unpublished per curiam opinion of the Court of Appeals, issued February 22, 2024 (Docket No. 366112). In doing so, the panel held that "[t]he trial court's failure to make best interest findings when it was clearly apparent there was a continuing dispute over the proper custody for the children was a clear legal error," vacated the trial court's custody order, and remanded for a best-interest hearing. *Id*. at 4.

On remand, the trial court held several days of evidentiary hearings to address custody, parenting time, and the children's best interests. Various witnesses testified, including the middle/high school principal; an employee of the before-and-after school enrichment program that the children attended during defendant's parenting time; a Children's Protective Services (CPS) investigator; the office manager of an eye doctor's office; defendant's girlfriend, Tiana Compton; ST's second-grade teacher; a medical social worker; the school resource officer; JT; Dr. Kimberly Lem; a paraprofessional and coach at the elementary school; UT's fourth-grade teacher; two of plaintiff's friends; defendant; and plaintiff.

The trial court found that the children had established custodial environments with both parents, and after addressing the best-interest factors of MCL 722.23 and the parenting-time factors of MCL 722.27a, ordered joint legal and physical custody between the parties.

## II. ANALYSIS

### A. REMAND

First, defendant argues that the trial court erred by failing to follow the remand instructions. We review de novo as a question of law whether a trial court followed an appellate court's ruling on remand. *Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 127; 737 NW2d 782 (2007). We review for clear error the trial court's factual findings and review de novo the trial court's conclusions of law. *Id*.

A trial court must strictly comply with an appellate court's mandate on remand. *Rodriguez v Gen Motors Corp (On Remand)*, 204 Mich App 509, 514; 516 NW2d 105 (1994). When an appellate court remands a child custody matter, the trial court "should consider up-to-date information." *Fletcher v Fletcher*, 447 Mich 871, 889; 526 NW2d 889 (1994). The trial court may conduct the hearings or proceedings that are necessary for it to make accurate determinations about the child's best interests. *Ireland v Smith*, 451 Mich 457, 468-469; 547 NW2d 686 (1996).

Contrary to defendant's argument, the trial court properly complied with the remand order. Our prior opinion remanded this matter for the trial court to hold a hearing to consider the children's best interests in relation to defendant's motion. *Thomas*, unpub op at 4. The trial court complied with this mandate, as it held an evidentiary hearing and then resolved defendant's motion. Nothing more was required of the court to comply with this Court's remand directive. Defendant's arguments about the correctness of the trial court's decision, or it's perceived

-2-

reluctance to decide the motion, are not remotely relevant to whether the court complied with the remand order.[2]

## B. BEST INTERESTS

Next, defendant argues that the trial court erred in its findings under almost all of the best-interest factors, as well as in its ultimate custody determination.

"To expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28. Consistent with this directive, we will affirm the trial court's factual findings unless the evidence clearly preponderates in the other direction. *Mitchell v Mitchell*, 296 Mich App 513, 519-520; 823 NW2d 153 (2012). A trial court abuses its discretion in a custody dispute when its "decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). Finally, we review de novo the trial court's application of the law to the facts. *Kaeb v Kaeb*, 309 Mich App 556, 564; 873 NW2d 319 (2015).

In all custody disputes, the trial court's custody determinations must be made on the basis of the child's best interests. See *Eldred v Ziny*, 246 Mich App 142, 150; 631 NW2d 748 (2001). The trial court found that the children had an established custodial environment with both parents, which is permissible. *Berger*, 277 Mich App at 707. A trial court may not modify a child's established custodial environment unless there is clear and convincing evidence that the change is in that child's best interests. MCL 722.27(1)(c). To determine the custody arrangement that is in a child's best interests, the trial court must consider the factors outlined in MCL 722.23. See *Bofysil v Bofysil*, 332 Mich App 232, 244; 956 NW2d 544 (2020).

First, the trial court's determination that Factor (a) was equal was not against the great weight of the evidence. Defendant's arguments to the contrary represent more of a highlighting of the parenting differences that the trial court also observed, rather than a direct attack on the Factor (a) criteria. In fact, defendant acknowledges that the children and plaintiff love each other,

---

[2] For example, defendant argues that the trial court erred by failing, in its decision, to refer to certain parts of defendant's evidence, such as JT's testimony about plaintiff coaching him, and a counselor's testimony about certain behavioral issues. However, a trial court is not required to comment on every piece of evidence, *Baker v Baker*, 411 Mich 567, 583; 309 NW2d 532 (1981), and again, the substantive correctness of the trial court's ruling does not impact whether it complied with the remand order. And, in any event, the trial court acknowledged JT's testimony and questioned why JT's opinions about his parents changed throughout the case. The trial court was in the best position to judge JT's credibility. See *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

and the issues that he raises under this factor, such as plaintiff's smoking and their difficulty coparenting, do not detract from the emotional ties that this factor contemplates.

Likewise, it was not against the great weight of the evidence to weigh equally Factor (b). Specifically, defendant objects to the trial court's failure to rely on counselor Cricket Alexander's testimony. The trial court, however, had the opportunity to hear from the parties, as well as additional witnesses, who provided evidence of more recent events than what was contained in Alexander's testimony. It was the role of the trial court to determine credibility and weigh the evidence. See *In re Ellis*, 294 Mich App at 33. Although defendant argues that plaintiff lacked the capacity and disposition to provide the children with guidance, the record also demonstrated that plaintiff was affectionate with the children and was involved in their education and extracurriculars.

Next, the trial court's finding that Factor (c) weighed equally was not against the great weight of the evidence. It is true, as defendant argues, that defendant financially supported the children throughout their lives. There was no evidence, however, that plaintiff could not provide for the children. Plaintiff had stayed home with the children before the divorce and began to work part-time after the separation. And although JT testified that plaintiff did not cook for the children, the trial court was not required to accept JT's testimony, as plaintiff testified that she provided food for the children, took the children to appointments, and had them shower and brush their teeth. Further, it was not irrefutably established that ST's dental issues were the result of negligence by plaintiff. In the end, there was sufficient evidence in the record such that the trial court's findings on Factor (c) were not against the great weight of the evidence.

It was also not against the great weight of the evidence for the trial court to weigh equally Factor (d). The children had always lived in the home in which they lived with plaintiff. Since defendant moved out, the children also consistently lived with him. Defendant's family lived near him, while plaintiff's parents did not live near her, but the record also demonstrates that plaintiff's older son lived nearby. Further, the children consistently had friends over to plaintiff's home, and plaintiff had farm animals with whom the children engaged. Defendant relies significantly on JT's testimony as evidence that plaintiff's home was inappropriate, but JT had also chosen to move out of defendant's home and stop communicating with him for a significant period. Again, it is the trial court, not this Court, that gauges credibility, which then impacts the weight given to the evidence.

The defendant also challenges the trial court's findings under Factor (f). The record demonstrated that defendant operated his business and had positive interactions with mental-health professionals, CPS, and school officials. Counselor Alexander testified that defendant was stricter than plaintiff was and that the children were better behaved with him. Plaintiff did not dispute that the children engaged in concerning behavior like swearing and threatening defendant, or that she encouraged JT to post negative statements about defendant online. Further, it was undisputed that when with plaintiff JT, UT, and BT wore shirts with inappropriate messages. JT also testified that plaintiff attempted to drive with him while intoxicated. Despite this concerning evidence, there was no evidence that either party had substance-abuse issues that impacted their relationships with their children. Plaintiff testified that her "No Brad Rule" was intended to keep the children from speaking negatively about defendant throughout her parenting time. Although, as defendant argues, even the fact that the rule uses defendant's first name rather than "dad" raises a question

-4-

about the purported positive intent of the rule, plaintiff was employed at the children's school, and other witnesses testified positively about her and her interactions with the children, and about her trying to correct the children's inappropriate language. Considering the trial court's better position from which to weigh the evidence, the evidence on this factor did not clearly preponderate in the opposite direction. See *Mitchell*, 296 Mich App at 519-520.

Next, the trial court did not err by weighing equally Factor (g). Defendant argues that the trial court did not, but should have, relied on Dr. Lem's findings about plaintiff's personality or counselor Alexander's testimony. However, the trial court heard plaintiff testify, and there was not conclusive evidence that she had a mental-health issue that affected her ability to parent. As plaintiff argues, Dr. Lem's reports that defendant now claims demonstrate plaintiff's mental-health issues, came *before* the parties agreed to joint custody. Finally, there was no evidence that either party had physical health issues.

Likewise, the trial court's determination that Factor (h) weighed equally was not against the great weight of the evidence. The record demonstrated that both parents communicated with the school and attended conferences and sporting events. Plaintiff also worked in the children's school, and defendant engaged the children in a before-and-after school program, which seemed to be a positive experience for the children. Although defendant relies on the principal's testimony to argue that defendant held the children accountable while plaintiff justified their actions, the record demonstrates that the children had various struggles, including mental-health concerns. Defendant has not established that plaintiff's attempt to understand the children's struggles was negative. The children appeared to have more absences when with plaintiff, but plaintiff also testified about the children being ill and going to the dentist, which was a significant distance away. Although there is a potential, as defendant argues, that plaintiff upset BT to the point that he ran from the school and resisted going to defendant's house, the record does not conclusively demonstrate that plaintiff tried to interfere with defendant's parenting time or otherwise disrupt BT's experience at school, or that plaintiff caused BT to post the photograph of the toy gun that resulted in a school threat assessment. Finally, defendant argues that the children were overtired when they returned from plaintiff's house, but ST's teacher testified that she could not see a difference in ST on the basis of whose week of parenting time it was. Again, the conflicting evidence required the trial court to determine which evidence to believe and weigh accordingly.

Nor was it against the great weight of the evidence for the trial court to weigh equally Factor (j). The record demonstrated that plaintiff had a "No Brad Rule," but the trial court found that this rule was intended to prevent the children from complaining about defendant during their time with plaintiff. Plaintiff testified that she regularly updated the Our Family Wizard app with appointments and ensured that the children made their Thursday phone calls to defendant, but that defendant regularly failed to give her appropriate notice of appointments. The trial court found that both parties alleged that the other party failed to properly facilitate the phone calls. Defendant testified that he encouraged the children to speak respectfully of plaintiff, which his girlfriend Compton confirmed. Plaintiff also testified that she encouraged the children to show defendant respect. Most concerning are the comments that BT made about killing defendant, without plaintiff correcting him. Defendant also raises the issue of plaintiff taking BT and ST to get their ears pierced, even after defendant told her that he disagreed with her decision to allow JT to get his ears pierced. Giving deference to the trial court's credibility determinations, however, see

*Shann v Shann*, 293 Mich App 302, 305; 809 NW2d 435 (2011), the evidence does not clearly preponderate against the trial court's findings under Factor (j).

The trial court, under Factor (i), twice met with the children, and the trial court stated that it considered the children's preferences.

Although defendant argues that, under Factor (*l*), the trial court only relied on the fact that JT testified instead of considering the details of JT's testimony or other evidence that defendant presented, the record demonstrates that the trial court properly weighed the children's best interests and did not abuse its discretion by awarding joint physical custody. Further, even if the trial court erred by weighing equally Factors (f) and (j), a trial court's best-interest determination is not a mathematical weighing of the factors, see *Berger*, 277 Mich App at 712, and the record does not demonstrate that the trial court's ultimate determination was an abuse of discretion.

## C. LEGAL CUSTODY

Defendant further argues that the trial court erred by awarding joint legal custody. Though we recognize that this is a closer question, given the standards of review, we reject the argument that reversal is warranted.

Joint legal custody means that parents share decision-making authority for the important decisions affecting the child's welfare. *Lieberman v Orr*, 319 Mich App 68, 80; 900 NW2d 130 (2017). See also MCL 722.26a(7)(b). MCL 722.26a(1) provides that, when a trial court is determining whether joint custody is in a child's best interests, in addition to considering MCL 722.23, the trial court is to consider "[w]hether the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child." MCL 722.26a(1)(b). To share joint legal custody, "parents must be able to agree with each other on basic issues in child rearing—including health care, religion, education, day to day decision-making and discipline—and they must be willing to cooperate with each other in joint decision-making." *Bofysil*, 332 Mich App at 249 (quotation marks and citation omitted). If two equally capable parents are unable to cooperate regarding important decisions that involve the welfare of their children, then the trial court must determine which parent will have sole custody. *Id*.

The trial court found that, although the parties had a history of difficulties agreeing on certain issues affecting the children, "they seem to be able to work those out generally." The court noted, when discussing the best interest factors, that despite some communication issues the parties were not out to sabotage each other, and as the children get older, it may be easier for the issues surrounding appointments to be worked out. In addition, the court offered its availability if the parties could not agree on certain matters.

We recognize that there is record evidence supporting each view on this issue. The record shows many instances of the parties moving the trial court to resolve disagreements between the parties on such things as medical appointments and certain medical care. On the other hand, those disagreements did not generally harm the children, as they have fared well in school and are otherwise in good health. And, as the trial court noted, the children are older and perhaps will have fewer issues to address, and the trial court was still available should the parents reach an impasse. Because this Court should affirm trial court custody orders to promote "prompt and final

adjudication," MCL 722.28, and because the trial court was aware of the parties and their issues since 2020, and was best able to gauge the evidence on this issue, we cannot disturb the court's ruling as to legal custody.

Affirmed.

/s/ Christopher M. Murray
/s/ James Robert Redford
/s/ Michelle M. Rick